No. 91-110

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

STATE OF MONTANA,

      Plaintiff and Respondent,

  -vs-

JAY LUNDQUIST,

      Defendant and Appellant.


APPEAL FROM:    District Court of the Fourth Judicial District,
                In and for the County of Missoula,
                The Honorable Jack L. Green, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

      William Boggs, Attorney at Law, Missoula, Montana.

      For Respondent:

      Hon. Marc Racicot, Attorney General, Helena,
      Montana: John Paulson, Assistant Attorney General,
      Helena, Montana: Robert L. Deschamps, 111, County
      Attorney, Missoula, Montana: Betty Wing, Deputy
      County Attorney, Missoula, Montana.

**FILED**

Filed: JAN 2 3 1992

CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: December 12, 1991

Decided: January 23, 1992

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

In September **1988** Jay Lundquist pled guilty to sexual intercourse without consent. He was sentenced to ten years in the Montana State Prison with the entire sentence suspended on certain conditions of probation. In January **1991** the District Court of the Fourth Judicial District, Missoula County, revoked Lundquist's probation. He appeals. We reverse and remand.

The issue is whether the District Court abused its discretion in revoking Lundquist's probation and sentencing him to prison.

Lundquist was charged with sexual intercourse without consent upon information obtained from his former foster daughter. At the time of the complaint, she was a freshman in high school. Lundquist agreed to plead guilty in exchange for a recommendation by the State that he receive a three-year deferred imposition of sentence with a requirement that he complete a sexual offender treatment program under licensed clinical psychologist Michael Scolatti, Ph.D., or another approved program.

The District Court rejected the State's recommendation and sentenced Lundquist to a term of ten years in the Montana State Prison, all suspended, with thirteen separate terms and conditions of probation. These included that he "shall obtain a sexual offender evaluation by Dr. Scolatti" at his own expense and that he "shall participate and complete counseling as recommended by the sexual offender evaluation."

Between his sentencing in October **1988** and April **1990,** Lundquist entered Dr. Scolatti's program and attended seventy-six group therapy sessions and thirteen individual sessions. Each session required a 150-mile round trip from Lundquist's residence in Philipsburg, Montana, to Dr. Scolatti's office in Missoula, Montana. During this time, Lundquist had a 100 percent attendance record, with one excused absence. He paid Dr. Scolatti a total of $2,450 in counseling fees.

On May 7, **1990,** Dr. Scolatti wrote to Lundquist stating that he was being terminated from the sexual offender program because he had failed to develop a payment schedule for his outstanding therapy balance of $1,260. A copy of the May 7 letter was provided to Lundquist's probation officer.

On November 7, **1990,** Dr. Scolatti wrote directly to Lundquist's probation officer. In that letter, he stated that Lundquist had been terminated from the sexual offender program because 1) he was unable to pay for the program, and 2) he had repeatedly refused to participate in the written portion of the program. On December 7, **1990,** the State filed a petition to revoke Lundquist's suspended sentence. After a hearing at which the State presented testimony by Dr. Scolatti and his associate, and Lundquist and his wife testified, the District Court revoked the suspended sentence. The court found that Lundquist had violated

the term of his probation that he "participate and complete counseling as recommended by the sexual offender evaluation."

Section 46-23-1013(2), MCA, provides that

> [i]f the violation [of a condition of release on probation] is established [at a revocation hearing], the court may . . . revoke the probation or suspension of sentence and may require [the person on probation] to serve the sentence imposed or any lesser sentence and, if imposition of sentence was suspended, may impose any sentence which might originally have been imposed.

The standard for revocation of probation is whether the judge is reasonably satisfied that the conduct of the probationer has not been what he agreed it would be if he were given liberty. State v. Robinson (1980), 190 Mont. 145, 148-49, 619 P.2d 813, 815. This Court's standard of review is whether the district court has abused its discretion. Robinson, 619 P.2d at 815.

In State v. Stangeland (1988), 233 Mont. 230, 758 P.2d 776, this Court affirmed the revocation of a suspended sentence based on Stangeland's failure to complete an outpatient sexual offender treatment program. Stangeland had a "poor, hostile and uncooperative attitude," verbally threatened to harm a program therapist, irregularly attended program sessions, visited the victim's home, and consumed alcohol, all in violation of his contract with the sexual offender program. Stangeland, 758 P.2d at 778.

In State v. Friedman (1987), 225 Mont. 373, 732 P.2d 1322, this Court affirmed the revocation of a probationary period of defendant's sentence for failure to complete a sexual offender

4

treatment program. The director of the treatment program testified at the revocation hearing that Friedman did not attempt to participate in his treatment, that complaints had been received about Friedman contacting his victims, and that he considered Friedman to be extremely dangerous. Friedman, 732 P.2d at 1324.

In Stangeland and Friedman, the violations of the terms of probation were more grievous than the violations alleged here. In this case, the reason originally given in May 1990 for Lundquist's termination from the sexual offender program was his failure to develop a schedule for payment of $1,260 he owed Dr. Scolatti. At that time, he had been in the program for eighteen months and had paid some $2,450 in counseling fees. At the revocation hearing, Lundquist introduced into evidence his income tax return for 1989, which showed that he and his wife, with one dependent daughter, had an adjusted gross income in 1989 of $6,713. He also testified that he had paid restitution to his victim in the amount of $540.

In November 1990, six months after Lundquist was terminated from the sexual offender treatment program, a second reason was given for his termination from the program. In the letter to Lundquist's probation officer, Dr. Scolatti wrote that Lundquist was terminated from the program because of his "repeated refusals to participate in the written portion of the program." At the revocation hearing, Dr. Scolatti testified that Lundquist attempted to act "more as a co-therapist rather than as a member of the

5

group" in group therapy sessions. He further testified that Lundquist indicated that he had been through a religious metamorphosis or transformation and that he is no longer the man who committed the offenses. In Lundquist's view, the man he has become does not require counseling, because he would not reoffend. He now talks to angels who guide him through most of his life. Dr. Scolatti testified that he had considered whether Lundquist was psychotic, but had concluded that this was simply Lundquist's system of religious beliefs.

Dr. Scolatti testified that Lundquist agrees that child molestation is bad and that he admits to his offense. He also testified that there is a low to moderate probability that Lundquist will reoffend.

Here, the reasons for termination from the program were subtle and complicated. To the extent that revocation was based on Lundquist's failure to pay full fees, we conclude that it was unreasonable, given the evidence of his low income and the fees he had already paid to Dr. Scolatti. To the extent revocation was based on Lundquist's reasonable expression of his genuine religious beliefs, it appears to contravene his right to free exercise of religion.

We hold that, based on the evidence presented at the revocation hearing, the District Court abused its discretion in sentencing Lundquist to serve his original prison sentence. The terms of

Lundquist's probation did not require that he give up his religious beliefs or take food from his family's table to pay for sexual offender counseling. He had an eighteen-month history of compliance with the only condition of probation which he was accused of violating. For over six months after he was terminated from the sexual offender program, no effort was commenced to have him removed from the community. Lundquist has no previous criminal history. As was suggested by Lundquist's counsel, the District Court could have required him to offer a payment plan and apply for readmission into Dr. Scolatti's program or to find another outpatient sexual offender treatment program.

We reverse the judgment of the District Court and remand this matter to District Court for further proceedings consistent with this Opinion.

_____
Chief Justice

7

We concur:

_John Conway Harrison_

_Karla M. Gray_

_William E. Hunt Sr_

_Jim Trieweiler_

_R.C. McDonough_

_[signature]_
Justices