NO.   94-340

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

STATE OF MONTANA,

     Plaintiff and Respondent,

  v.

RONALD D. PENCE,

     Defendant and Appellant

FILED

SEP 08 1995

*Ed ...*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fourth Judicial District,
               In and for the County of Missoula,
               The Honorable Edward P. McLean, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

         William F. Hooks, Appellate Defender Office,
         Helena, Montana

     For Respondent:

         Hon. Joseph P. Mazurek, Attorney General,
         Kathy Seeley, Assistant Attorney General,
         Helena, Montana

         Robert L. "Dusty" Deschamps, III, Missoula
         County Attorney, Daniel Safransky, Deputy
         County Attorney, Missoula, Montana

Submitted on Briefs:   June 20, 1995

Decided:   September 8, 1995

Filed:

_____
      Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

The defendant, Ronald D. Pence, was charged by amended information, filed in the District Court for the Fourth Judicial District in Missoula county, with robbery, in violation of § 45-5-401, MCA. He pled guilty to that charge. The District Court imposed a three-year deferred sentence subject to conditions. Pence violated several of the conditions, and pursuant to a petition to revoke his deferred sentence, the District Court sentenced Pence to 40 years in prison, with 25 years suspended, and declared Pence a dangerous offender. Pence appeals the District Court's order. We reverse the District Court.

The issues raised on appeal are:

1. Did the District Court err when it designated Pence a dangerous offender for purposes of parole eligibility?

2. Did the District Court err when it failed to consider alternatives to imprisonment?

### FACTUAL BACKGROUND

On September 5, 1992, Frank Vannoy went to his rental property in which Pence was living to collect past-due rent. Pence paid Vannoy the money. Vannoy then gave Pence a 30-day eviction notice, to which Pence allegedly responded, "you are never going to get me out." After this brief encounter, Vannoy got into a car occupied by his sister and brother-in-law. Pence then exited the rear entrance of his home. Vannoy insists, and Pence denies, that Pence had a shotgun with him and "demanded us to halt." Vannoy alleged

2

that Pence approached the car, pointed the shotgun at him, his sister and brother-in-law, and demanded the rental money which had been paid. Pence denied Vannoy's account of the incident. He admitted that he exited the rear entrance of the rental property, but asserted that he did not have a shotgun.

On September 21, 1992, Pence was charged by information filed in the District Court for the Fourth Judicial District Court, Missoula County, with robbery, pursuant to § 45-5-401, MCA, and two counts of felony assault, pursuant to § 45-5-202, MCA, for this incident, and also with theft, pursuant to § 45-6-301, MCA, for an unrelated incident. The information specified that, for purposes of the robbery charge, Pence put Frank Vannoy "in fear of immediate bodily injury by pointing a shotgun at him."

Pence pled not guilty to all four charges. The Missoula County Attorney's office, on June 1, 1993, filed an amended information, charging Pence with robbery. The amended information specified that Pence, while in the course of a theft of $300, "threatened to inflict bodily injury upon Frank Vannoy." The amended information did not specify that Pence used a shotgun to commit the robbery. Pence pled guilty to the robbery charge. In his written guilty plea, Pence indicated that he had taken "$300 from Frank Vannoy[,] threatening him if he didn't give it to me."

The District Court received a presentence investigation report, and on September 2, 1993, ordered Pence's imposition of sentence deferred for three years, subject to compliance with

terms and conditions of probation. The relevant terms and conditions included that: (1) Pence not enter any establishment whose primary source of business comes from the sale of alcohol; (2) Pence not possess or use any alcoholic beverages or use any illegal drugs; (3) Pence submit to blood, breath, and/or urine testing for the purpose of alcohol and/or drug detection upon the request of his probation officer; and (4) Pence obtain counseling as directed by his probation officer. Subsequently, Pence violated all four of these terms and conditions. In addition, Pence violated a state probation rule that prohibits probationers from owning, possessing, or being in control of firearms or deadly weapons.

Pence's probation officer filed a report of probation violation in the District Court. The report indicated that Pence admitted possession of a firearm and the use of marijuana. As a result, Pence's probation officer had Pence's truck searched. Ammunition, a pocket knife, a wooden club, and a "bullet-riddled silhouette target" were found in the truck. Additionally, the report indicates that, as a result of a search of Pence's home, probation officers located several firearms.

The report recommended that the District Court revoke Pence's three-year deferred sentence, and that the court sentence Pence to seven years in prison, with three years suspended. The report also recommended that the court consider Pence for the intensive supervision program.

The District Court held hearings to consider the alleged probation violations. At the initial hearing, Pence admitted all violations except the weapons violations. At a subsequent hearing, Pence's probation officer provided testimony to substantiate the weapons violations.

At the conclusion of Pence's probation officer's testimony, the District Court found that Pence had violated the terms of his probation. The court revoked its earlier deferred sentence and sentenced Pence to 40 years in the Montana State Prison, with 25 years suspended. The District Court's rationale for its ruling was as follows: that Pence had placed Frank Vannoy in great fear; that Pence had signed two documents indicating that he knew that possessing weapons violated his probation; that the court took a great risk in placing Pence on probation in light of the fact that Pence had used a weapon during the commission of the robbery; and that Pence did not appreciate the court's probationary sentence and went back to his previous behavior of possessing firearms.

The court designated Pence a dangerous offender for purposes of parole eligibility, based on its conclusion that Pence's attitude about the use of firearms mandated such a designation.

Immediately following the District Court's oral ruling, Pence's counsel asked the judge to reconsider his sentence, pointing out that the court was required to consider alternatives to incarceration. The court denied counsel's request, stating that, "[t]he Court considered alternative placement prior to

today's proceeding. The Court is greatly concerned when there are violations of an armed robbery who [sic] turns around and possesses, I believe, six different types of weapons."

Pence appeals the District Court's judgment.

## ISSUE 1

Did the District Court err when it designated Pence a dangerous offender for purposes of parole eligibility?

We review a district court's dangerous offender designation to determine whether the District Court abused its discretion. *State v. Buckman* (1989), 236 Mont. 37, 40, 768 P.2d 1361, 1363.

Dangerous offender designation is based on § 46-18-404(1), MCA, which provides:

> Except as provided in subsection (4), the sentencing court shall designate an offender a nondangerous offender for purposes of eligibility for parole . if:
> (a) during the 5 years preceding the commission of the offense for which the offender is being sentenced, the offender was neither convicted of nor incarcerated for an offense committed in this state or any other jurisdiction for which a sentence to a term of imprisonment in excess of 1 year could have been imposed; and
> (b) the court has determined, based on any presentence report and the evidence presented at the trial and the sentencing hearing, that the offender does not represent a substantial danger to other persons or society.

If the court finds that both subsections (a) and (b) of the statute have been satisfied, the court must designate the offender nondangerous. However, if only one part of the statute applies to the offender, it is within the court's discretion whether to designate him dangerous for parole purposes. *State v. Lorenz* (Mont.

6

*267* Mont. 186, 188, 883 P.2d 98, 99 (citing *State v. Miller* **(1988)**, **231** Mont. 497, 517, 757 P.2d 1275, 1287).

Section 46-18-404(3), MCA, requires that if a district court designates an offender as dangerous, it shall make that determination part of the sentence imposed and shall state the determination in its judgment. In addition, we have required district courts to articulate their reasons for designating an offender as dangerous. We have held that mere recitation of the statutory language is not sufficient. See *state v.* Morrison (1993), 257 Mont. 282, **848** P.2d 514.

In its judgment designating Pence a dangerous offender, the District Court gave the following reasons:

1. Mr. Vannoy was placed in great fear by Mr. Pence;

**2.** Mr. Pence was given a three year deferred imposition of sentence;

**3.** He [Mr. Pence] signed two documents stating that he knew that the weapons possession meant that it was in violation of his probation;

[4.] The Court took a great risk in placing him [Mr. Pence] on probation because it was an offense committed with a weapon and Mr. Pence did not appreciate that and went back to his previous behavior in possessing firearms;

[5.] It is the Court's opinion that Mr. Pence cannot at this time successfully complete a probationary period without some incarceration;

[6.] The Court feels that until he [Mr. Pence] changes his attitude about the use of firearms that it is necessary to designate him a dangerous offender.

The District Court did not make specific findings in its judgment that Pence had been convicted of, or incarcerated for, an offense committed in the five years preceding the commission of the robbery charge pending against him, or that Pence represented a substantial danger to other persons or society. It is clear from the record that Pence had never been either convicted of or incarcerated for a felony. As a result, the District Court was free to designate Pence a dangerous offender only if it determined that, based on the presentence report and any evidence presented at the trial and sentencing hearing, Pence posed a substantial danger to other persons or to society.

However, the court did not specifically find that Pence posed a substantial danger to anyone. Furthermore, even if this Court presumed such a finding, there was no clearly articulated rationale to support such a finding, as required by our decision in *Morrison.*

Finally, we conclude that the record did not contain substantial evidence upon which the District Court could support designating Pence a dangerous offender, and therefore, that the District Court abused its discretion when it did so. The District Court's designation appears to be based on the facts that Pence placed his victim in "great fear" by use of a weapon and then continued to possess weapons in violation of the terms of his probation. However, there is no basis in the record to find that Vannoy was placed in "great fear." Pence denied using a weapon; the crime to which he pled guilty did not involve use of a weapon;

8

and his sentence could not have been deferred if his conviction was based on use of a weapon. Section 46-18-222(5), MCA. Neither does mere possession of firearms establish that Pence presents a danger to persons or society.

For these reasons, we reverse that part of the District Court's sentence which designated Pence a dangerous offender.

ISSUE 2

Did the District Court err when it failed to consider alternatives to imprisonment?

We review a district court's decision to revoke probation and sentence an offender to prison to determine whether the court abused its discretion. *State v. Lundquist* (1992), 251 Mont. 329, 331, 825 P.2d 204, 206.

The State first contends that Pence is not a nonviolent offender. The State asserts that, because Pence was charged with robbery and because Vannoy alleged in the presentence investigation that Pence used a shotgun to commit the robbery, he does not qualify as a nonviolent offender. The State ignores the fact that Pence did not plead guilty to a charge that alleged either the threat of, or actual use of, a deadly weapon during the commission of the crime. Section 46-18-104(3), MCA, defines a nonviolent felony offender as "a person who has entered a plea of guilty to a felony offense other than <u>a crime of viole</u>nce . ." (Emphasis added.) Section 46-18-104(2), MCA, defines a crime of violence as:

(a) a crime in which an offender uses or possesses and threatens to use a deadly weapon during the commission or attempted commission of a crime;

(b) a crime in which the offender causes a serious bodily injury or death to a person other than himself; or

(c) any sexual offense in which the offender causes bodily injury to the victim or uses threat, intimidation, or force against the victim.

Pence did not plead guilty to a "crime of violence," and unproven allegations in the presentence report do not change the nature of his crime. Consequently, we conclude that Pence is a nonviolent offender

The State contends, in the alternative, that even if Pence is a nonviolent offender, the District Court adequately considered alternatives to imprisonment. We disagree. The statutory scheme quite clearly sets out the steps a district court must take when sentencing a nonviolent felony offender. Section 46-18-201(10), MCA, states that:

In sentencing a nonviolent felony offender, the court shall first consider alternatives to imprisonment of the offender in the state prison, including placement of the offender in a community corrections facility or program. In considering alternatives to imprisonment, the court shall examine the sentencing criteria contained in 46-18-225. If the offender is subsequently sentenced to the state prison or the women's correctional center, the court shall state its reasons why alternatives to imprisonment were not selected, based on the criteria contained in 46-18-225.

Section 46-18-225, MCA, states that:

Prior to sentencing a nonviolent felony offender to a term of imprisonment in the state prison or the women's correctional center, the court shall take into account whether:

(1) the interests of justice and the needs of public safety truly require the level of security

10

provided by imprisonment of the offender in the state prison or the women's correctional center;

(2) the needs of the offender can be better served in the community or in a facility or program other than the state prison or the women's correctional center;

(3) there are substantial grounds tending to excuse or justify the offense, though failing to establish a defense;

(4) the offender acted under strong provocation;

(5) the offender has made restitution or will make restitution to the victim of the offender's criminal conduct;

(6) the offender has no prior history of conviction for a criminal act or has led a law-abiding life for a substantial period of time before the commission of the present crime;

(7) the offender's criminal conduct was the result of circumstances that are unlikely to recur;

(8) the character and attitude of the offender indicate that the offender is likely to commit another crime;

(9) the offender is likely to respond quickly to correctional or rehabilitative treatment; and

(10) imprisonment of the offender would create an excessive hardship on the offender or the offender's family.

As we have already concluded, Pence is a nonviolent felony offender. Therefore, the District Court was bound to apply the procedure required by §§ 46-18-201(10) and -225, MCA. In *State v. Stevens* (1993), 259 Mont. 114, 116, 854 P.2d 336, 337, we stated that § 46-18-201(10), MCA, imposes certain obligations on a court when sentencing a nonviolent felony offender

Initially, a district court must consider alternatives to imprisonment. Second, in considering alternatives to imprisonment, a district court must examine the ten sentencing criteria found in § 46-18-225, MCA. Finally, if a district court decides against

11

alternatives to imprisonment, it must provide reasons why it did not select alternatives. *Stevens*, **854** P.2d at 337.

The State contends that the District Court's cursory statement in the sentencing hearing that, "[t]he Court considered alternate placement prior to today's proceeding," "affirmatively establishes" that the court considered alternatives to imprisonment. However, even if we accepted the State's liberal application of § 46-18-201(10), MCA, the District Court still failed to comply with the second and third *Stevens* requirements.

The District Court's judgment makes no mention of the factors set forth in § 46-18-225, MCA, and fails to discuss why, when considering those factors, an alternative to imprisonment might not have been appropriate in this case.

For these reasons, we reverse that part of the District Court's judgment which designated Pence a dangerous offender; and we vacate the remainder of the sentence and remand for further consideration of his sentence in light of §§ 46-18-201(10) and -**225,** MCA.

_____
Justice

We concur:

_____

William E. Hunt

W. William Beauchamp

Justices