No. 96-390

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

STATE OF MONTANA,

               Plaintiff and Respondent,

   v.

PETER WILLIAM HARPER,

               Defendant and Appellant.

APPEAL FROM:   District Court of the First Judicial District, In and for the County of
                 Lewis
                 and Clark, the Honorable Dorothy McCarter, Judge Presiding.

COUNSEL OF RECORD:

      For Appellant:

          Kenneth H. Gray, Helena, Montana

      For Respondent:

          Honorable Joseph P. Mazurek, Attorney General; Micheal Wellenstein,
          Assistant Attorney General, Helena, Montana

          Mike McGrath, Cournty Attorney, Helena, Montana

                    Submitted on Briefs: July 17, 1997

                    Decided: August 12, 1997
                    Filed:

_____
                     Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

A jury in the First Judicial District Court, Lewis and Clark County, found Peter William Harper guilty of two counts of misdemeanor possession of dangerous drugs and possession of drug paraphernalia.  He appeals.  We affirm.

Harper raises two issues on appeal:

1.  Whether his conviction of possession of methamphetamine is illegal on grounds that the State failed to prove that he was in "knowing control" of the drug "for a sufficient time to be able to terminate control."

2.  Whether his sentence is illegal because the court failed to consider alternatives to imprisonment as required by   46-18-201, MCA, and State v. Pence (1995), 273 Mont. 223, 902 P.2d 41.

At trial, the State presented evidence that from July 4 to July 6, 1995, Harper hosted his ex-brother-in-law, Andy Lopez, and Lopez's companion, Debbie Curitan, at his home near Helena, Montana.  Lopez and Curitan did not know anyone besides Harper in Helena.  They came to Helena from Idaho to make a July 6 delivery to a buyer, at Harper's home, of a large packet of methamphetamine with a value of between $50,000 and $75,000.

At about 4:15 p.m. on July 6, 1995, Helena police officers searched Harper's home. The lawfulness of the search has not been contested, and the fact that the search was a probation search was not disclosed to the jury.

When the officers arrived at Harper's home, Harper, Lopez, and John Ferriter were sitting at the kitchen table and Curitan was standing nearby.  The officers told Ferriter he could leave.  When he stood up to go, Ferriter attempted to take three twenty dollar bills that were sitting on the table, but the officers did not allow him to do so.

In the bedroom which Harper identified as his, the officers found a hand scale of a  type used to weigh drugs, a marijuana pipe, a bag of marijuana, and a wooden container  with residue of sodium acetate, which is commonly used as an adulterant to methamphetamine.  On top of Harper's refrigerator, the officers found a silver spoon which Harper denied ever having  seen before.  In the living room, they found small baggies of a type commonly used to hold powder drugs.

The officers discussed bringing in a drug-sniffing dog to see if there was any contraband they had missed.  Harper appeared to become nervous, with sweat trickling from his forehead.  Soon thereafter, an officer discovered the large packet of metham-phetamine in Harper's freezer.  When Harper was subsequently booked at the county jail, police discovered a bag of marijuana in his underwear.

At trial, Harper denied that he had known the purpose of Lopez and Curitan's visit to Helena and denied knowledge of the methamphetamine in his freezer.  He repudiated his previous statements to investigating officers, one of whom testified that Harper had admitted to having used marijuana, methamphetamine, and cocaine with Curitan and Lopez during their visit.  Harper also repudiated his previous statements to the officer

that he was aware of marijuana and other drugs in his house. Despite his previous admissions and despite the location in which it was discovered, Harper testified that the bag of marijuana in his underwear was not his.

Helena Police Officer Jungers testified at trial that Lopez had told him that when he first arrived at Harper's house on July 4, he placed the large chunk of methamphet- amine on Harper's coffee table, in Harper's presence, and weighed out six little baggies of the stuff. Jungers testified that Lopez told him Harper commented that the methamphetamine was "pretty stinky stuff," and then volunteered to help find buyers for the six small baggies of it. At trial, Lopez denied his previous statements to Jungers, saying that they were "words put into my mouth." Lopez testified that Harper had no knowledge of the methamphetamine.

The jury found Harper not guilty of possession with intent to sell methamphet- amine, but guilty of the lesser included offense of misdemeanor possession of the dangerous drug. The jury also found Harper guilty of misdemeanor possession of marijuana and misdemeanor possession of drug paraphernalia--namely, a scale, a crushing spoon, baggies, and a pipe. Based in part on his prior convictions and probation status at the time of these offenses, Harper was designated a persistent felony offender and was given consecutive prison sentences totaling thirty-one years, with ten years suspended.

Issue 1

Is Harper's conviction of possession of methamphetamine illegal on grounds that the State failed to prove that he was in "knowing control" of the drug "for a sufficient time to be able to terminate control?"

Criminal possession of dangerous drugs requires knowing control of the drugs for a sufficient time to be able to terminate control. Sections 45-2-101(57) and 45-9-102, MCA. Harper contends that there was insufficient evidence that he had knowing control of the methamphetamine to support his conviction of that charge.

Our standard of review of the sufficiency of the evidence is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Ahmed (1996), 278 Mont. 200, 212, 924 P.2d 679, 686. The credibility of witnesses and the weight to be given to their trial testimony are determined by the finder of fact, and if events are capable of different interpretations, the finder of fact determines which is the most reasonable. Ahmed, 924 P.2d at 686.

Under the above standards, it was the jury's privilege to believe the testimony of Officer Jungers over that of Harper and Lopez. If the jury did so, it clearly could

have found that Harper had knowing control of methamphetamine during the two days when he was aware of its presence in his home. Constructive possession or control may be imputed when contraband is found in a place immediately and exclusively accessible to the accused and subject to his dominion and control, which may be jointly shared with another person. State v. Neely (1993), 261 Mont. 369, 374, 862 P.2d 1109, 1112. Harper could have terminated his control of the methamphetamine at any point between July 4 and July 6 by telling Lopez to leave his home or at least to remove the drugs from his home. See Neely, 862 P.2d at 1112. We conclude that a rational trier of fact could have found the essential elements of the crime of possession of the dangerous drug methamphetamine beyond a reasonable doubt. We therefore hold that Harper's conviction of possession of methamphetamine is supported by sufficient evidence.

                              Issue 2

Is Harper's sentence illegal because the court failed to consider alternatives to imprisonment as required by  46-18-201, MCA, and State v. Pence (1995), 273 Mont. 223, 902 P.2d 41?

Section 46-18-201(11), MCA, provides:

In sentencing a nonviolent felony offender, the court shall first consider alternatives to imprisonment of the offender in the state prison, including placement of the offender in a community corrections facility or program. In considering alternatives to imprisonment, the court shall examine the sentencing criteria contained in 46-18-225. If the offender is subsequently sentenced to the state prison or the women's correctional system, the court shall state its reasons why alternatives to imprisonment were not selected, based on the criteria contained in 46-18-225.

In Pence, this Court vacated sentencing and remanded the case based upon the district court's inadequate consideration and discussion in its judgment of the sentencing criteria set forth in  46-18-225, MCA, as required under the above statute. On appeal, Harper contends the requirements of  46-18-201(11), MCA, and Pence were not met here.

This issue was not raised before the District Court. This Court has previously refused to review whether a district court failed to consider alternatives to imprisonment when the issue has not been preserved below. See State v. Goulet (1996), 277 Mont. 308, 311-12, 921 P.2d 1245, 1247; State v. Nelson (1995), 274 Mont. 11, 19-20, 906 P.2d 663, 667-68. For the same reasons as those discussed in Goulet and Nelson, we decline to further consider this issue.

Affirmed.

                         /S/  J. A.  TURNAGE


We concur:

/S/  KARLA M. GRAY
/S/  JIM REGNIER
/S/  TERRY N. TRIEWEILER
/S/  WILLIAM E. HUNT, SR.