No. 00-409

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 225N

STATE OF MONTANA,

Plaintiff and Respondent,

v.

JAY BRIAN JOHNSON,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

Honorable Thomas M. McKittrick, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

Edmund F. Sheehy, Jr., Cannon & Sheehy, Helena, Montana

For Respondent:

Honorable Mike McGrath, Attorney General; Ilka Becker,

Assistant Attorney General, Helena, Montana

Brant Light, County Attorney, Great Falls, Montana

Submitted on Briefs: April 12, 2001
Decided: November 15, 2001

Filed:

_____

Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Jay Brian Johnson (Johnson) appeals from an order entered by the Eighth Judicial District Court, Cascade County, denying his motion for postconviction relief. We affirm.

¶3 The issue for review is whether the District Court properly denied Johnson's petition for postconviction relief.

BACKGROUND

¶4 Johnson was charged in June 1992 by amended information with the crimes of aggravated kidnaping under § 45-5-303(1), MCA (1991), and sexual intercourse without consent under § 45-5-503(1), MCA (1991). He pled not guilty. Johnson initially provided his own counsel but subsequently his counsel withdrew and attorney Billy Miller was appointed to represent him. A month later Pat Flaherty was substituted as counsel. Johnson moved the court to reduce bail. When that motion was denied by the Honorable Joel Roth, Johnson moved to disqualify him. Judge Roth recused himself and the Honorable Thomas McKittrick immediately assumed jurisdiction. Johnson again moved the District Court to reduce his bail, which was denied by Judge McKittrick.

¶5 In March 1993 Johnson agreed by plea bargain to plead guilty to both charges and to waive certain rights. He was sentenced on May 18, 1993, to twenty years in the Montana State Prison (MSP) for aggravated kidnaping and twenty years in the MSP for sexual intercourse without consent, to be served consecutively. Johnson was also declared a

dangerous offender for purposes of parole. Johnson did not appeal, but petitioned the Sentence Review Division to review his sentence, and in April 1995 his sentence was affirmed.

¶6 In November 1994, while the sentencing decision was pending, Johnson, *pro se,* filed a petition for postconviction relief. The District Court denied his petition in March 2000. Johnson now appeals.

## STANDARD OF REVIEW

¶7 The standard of review of a district court's denial of a petition for postconviction relief is whether the district court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *State v. Charlo*, 2000 MT 192, ¶ 7, 300 Mont. 435, ¶ 7, 4 P.3d 1201, ¶ 7. This Court adheres to the doctrine of implied findings which states that where a court's findings are general in terms, any findings not specifically made, but necessary to the judgment, are deemed to have been implied, if supported by the evidence. *Interstate Brands Corp. v. Cannon* (1985), 218 Mont. 380, 384, 708 P.2d 573, 576.

## DISCUSSION

¶8 Inherent within the issue on appeal are two sub-issues:

¶9 1. Whether Johnson received ineffective assistance of counsel when his counsel did not appeal his designation as a dangerous offender.

¶10 2. Whether the District Court had subject matter jurisdiction to accept Johnson's guilty plea and impose sentence.

¶11 First, did Johnson receive ineffective assistance of counsel when his attorney did not appeal his designation as a dangerous offender?

¶12 In considering ineffective assistance of counsel claims in postconviction proceedings, this Court has adopted the two-pronged test set forth by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. The two-prong test set forth in *Strickland* requires first that counsel's performance was deficient. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693; *State v. Hagen* (1995), 273 Mont. 432, 440, 903 P.2d 1381, 1386 (*Hagen I*). This requires a showing that counsel made errors so serious that counsel was not functioning as the

"counsel" guaranteed the defendant by the Sixth Amendment. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693; *Hagen I*, 273 Mont. at 440, 903 P.2d at 1386. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693; *Hagen I*, 273 Mont. at 440, 903 P.2d at 1386. In the context of a guilty plea, prejudice is established if the petitioner demonstrates that, but for his counsel's deficient performance, he would not have pled guilty and would have insisted on going to trial. *State v. Cady*, 2000 MT 353, ¶ 10, 303 Mont. 258, ¶ 10, 15 P.3d 479, ¶ 10. This Court has also held that the *Strickland* standard applies to petitions for postconviction relief. *Hans v. State* (1997), 283 Mont. 379, 393, 942 P.2d 674, 683; and *Lester Kills On Top v. State* (1995), 273 Mont. 32, 49, 901 P.2d 1368, 1379.

¶13 Johnson claims he received ineffective assistance of counsel when his counsel did not appeal or advise him of his right to appeal his designation as a dangerous offender. Before reaching the merits of an ineffective assistance of counsel claim in a postconviction relief proceeding, it is necessary to determine whether such a claim is properly before the Court or whether the claim is procedurally barred. *Hagen v. State*, 1999 MT 8, ¶ 11, 293 Mont. 60, ¶ 11, 973 P.2d 233, ¶ 11(*Hagen II*). Such a claim could be barred by § 46-21-105(2), MCA (1993), which provides that grounds for relief which reasonably could have been raised on direct appeal may not be raised thereafter in a petition for postconviction relief. This Court has stated:

> [W]here ineffective assistance of counsel claims are based on facts of record in the underlying case, they must be raised in the direct appeal; conversely, where the allegations of ineffective assistance of counsel cannot be documented from the record in the underlying case, those claims must be raised by petition for postconviction relief.

*Hagen II, ¶* 12. The record in the case does contain the plea agreement and the District Court's reasoning for designating Johnson a dangerous offender, but Johnson's discussions with his counsel regarding the decision to appeal the designation as a dangerous offender are not part of the record. Because such facts are outside the record, Johnson has properly raised his ineffective assistance of counsel claim in his petition for postconviction relief. Therefore, we will not apply the procedural bar under § 46-21-105(2), MCA, and will examine his ineffective assistance of counsel claim on its merits.

¶14 Johnson argues he was provided ineffective assistance of counsel because his attorney did not advise him that he had a right to appeal his designation as a dangerous offender. In analyzing an ineffective assistance of counsel claim, the first prong of the *Strickland* test requires the defendant to show his counsel's performance was deficient. *Hagen I,* 273 Mont. at 440, 903 P.2d at 1386. Johnson claims the plea agreement did not specify that he could be designated a dangerous offender. Furthermore, Johnson argues that competent counsel would have advised him of his right to appeal the designation of dangerous offender and would have filed an appeal on his behalf.

¶15 Johnson's claim that the dangerous offender designation was not referenced in the plea agreement is without merit. The record clearly shows the dangerous offender designation was part of the plea agreement. The plea agreement did not stipulate any recommended sentence for Johnson, and it allowed each party to freely argue for any recommendation at sentencing. The plea agreement specifically stated that the presiding judge can designate Johnson a dangerous offender.

¶16 Section 46-18-404, MCA (1991), governs the designation of dangerous offender. Under § 46-18-404(3), MCA (1991), if a district court "determines that an offender is a dangerous offender, it shall make that determination a part of the sentence imposed and shall state the determination in the judgment." We have held that a district court must specifically articulate the reasons for making the designation as a dangerous offender based on specific facts taken from the record. *State v. Collier* (1996), 277 Mont. 46, 58, 919 P.2d 376, 384; *State v. Pence* (1995), 273 Mont. 223, 228, 902 P.2d 41, 44. Furthermore, we have stated that mere recitation of the statutory language is insufficient. *Collier*, 277 Mont. at 58, 919 P.2d at 384; *Pence*, 273 Mont. at 228, 902 P.2d at 44.

¶17 In designating Johnson a dangerous offender, the District Court specifically articulated the following reasons: (1) the nature of the two crimes committed; (2) the victim was hogtied, beaten and sexually assaulted by the defendant with his hands, a snow scraper and a tire iron; (3) the defendant has demonstrated a hatred for women and should be considered a high risk to re-offend; and (4) the defendant has a prison record which includes domestic abuse and armed robbery.

¶18 Accordingly, we conclude that the dangerous offender designation in this case was supported by the record and adequately justified in the District Court's written sentence.

¶19 By not appealing the designation as a dangerous offender, Johnson claims his

counsel's performance was deficient and his counsel did not act within the range of competence demanded of attorneys in criminal cases. We disagree. The District Court's designation of Johnson as a dangerous offender was supported by the record and justified in the District Court's sentence. Furthermore, a person who blacks out and then commits the heinous acts which Johnson did is perhaps the most dangerous of all offenders. We conclude that defense counsel's failure to appeal the dangerous offender designation did not constitute deficient performance. Therefore, the first prong of the *Strickland* test is not satisfied, and Johnson's claim of ineffective assistance of counsel fails.

¶20 Second, did the District Court have subject matter jurisdiction to accept Johnson's guilty plea and impose sentence?

¶21 The issue of subject matter jurisdiction may be raised by a party or by the court itself, at any stage of a judicial proceeding. *State v. Tweedy* (1996), 277 Mont. 313, 315, 922 P.2d 1134, 1135. It is well established that a guilty plea which is voluntarily and understandingly made constitutes a waiver of all nonjurisdictional defects and defenses, including claims of constitutional violations which occurred prior to the plea. *Hagan v. State* (1994), 265 Mont. 31, 35, 873 P.2d 1385, 1387.

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the plea.

*Hagan,* 265 Mont. at 35, 873 P.2d at 1387 (quoting Tollett v Henderson (1973), 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235, 243).

¶22 In this case, Johnson has not challenged the voluntary and intelligent nature of his plea, nor has he filed a motion to withdraw his plea of guilty. In his brief, Johnson's counsel admits "the voluntariness of the guilty plea could only have been raised by a motion to withdraw the same and [Johnson] never filed such a motion." Thus, by pleading guilty, Johnson has waived all nonjurisdictional claims. *State v. Wheeler* (1997), 285 Mont. 400, 402-03, 948 P.2d 698, 699.

¶23 In *Hagan,* we defined jurisdictional claims, in the context of waiver, as those set forth

in *United States v. Cortez* (9th Cir. 1992), 973 F.2d 764. *Hagan*, 265 Mont. at 36, 873 P.2d at 1388. Jurisdictional claims, in *Cortez,* were limited to "those cases in which the district court could determine that the government lacked the power to bring the indictment at the time of accepting the guilty plea from the face of the indictment or from the record." *Cortez*, 973 F.2d at 767, citing *United States v. Broce* (1989), 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927.

¶24 Johnson first argues that the District Court lacked subject matter jurisdiction to accept his guilty plea because the District Court failed to inform him of the maximum penalties, the mandatory minimums, and the possibility of a dangerous offender designation. The State argues these claims are nonjurisdictional as defined in *Hagan,* and must fail. The State is correct.

¶25 These claims do not affect the District Court's ability to accept Johnson's plea and impose sentence for his crimes, and as such, are nonjurisdictional claims under *Cortez* and *Hagan*. Because a voluntary plea waives all nonjurisdictional claims, these claims were waived by Johnson's guilty plea. While Johnson could have challenged these alleged violations by seeking to withdraw his plea on the grounds it was involuntary, he admittedly has failed to do so. He cannot now rectify that failure by raising these issues as jurisdictional claims, when they clearly are not jurisdictional in nature.

¶26 Second, Johnson argues that the State did not have the power to charge him with aggravated kidnaping at the time he entered his plea. The crime of aggravated kidnaping is defined at § 45-5-303, MCA (1991), and states in part:

> (1) A person commits the offense of aggravated kidnaping if he knowingly or purposely and without lawful authority restrains another person by either secreting or holding him in a place of isolation or by using or threatening to use physical force, with any of the following purposes:
>
>> . . .
>
>> (b) to facilitate commission of any felony or flight thereafter;
>
>> (c) to inflict bodily injury on or to terrorize the victim or another; . . .

¶27 In order to determine if the State had the power to bring the charge of aggravated kidnaping against Johnson at the time he entered his guilty plea, it is necessary to examine the face of the information and the record to determine if the facts support the charge. *Wheeler,* 285 Mont. at 403, 948 P.2d at 699-700. The amended information filed by the State stated that Johnson used physical force to restrain the victim against her will, took her to an isolated place outside of Great Falls, and sexually assaulted her. A review of the record reveals that it fully supports the charges in the amended information.

¶28 During the change of plea hearing, the victim testified that Johnson punched her in the face several times with his fist, causing the victim's right eye to be swollen shut and her left eye to be partially swollen shut. The repeated blows to the victim's face, inflicted by Johnson, also caused a hairline fracture to the victim's skull above the left eye. After beating the victim, Johnson hogtied the victim. The transcript of the change of plea hearing reveals the following:

> Question: Were you restrained?
>
> Answer: [T]hat's when he tied me up around my wrist and back-my wrists were behind my back, and then he tied like in a T shape around my ankles to where my back and feet were-or my hands were tied behind my back to my feet.

¶29 After restraining the victim, the record reflects Johnson drove to an isolated place in the Giant Springs area outside of Great Falls. When asked if there was any habitation or civilization around the area, the victim replied, "None whatsoever." And when asked how she would describe the area, she said, "Barren." After taking the victim to an isolated place, Johnson proceeded to assault the victim. The facts reveal that Johnson, without consent, inserted his fingers in her vagina and rectum, and then inserted a snow brush and a lug wrench in her vagina. Later, she was able to escape from Johnson's van.

¶30 Based on the information and the facts in the record, the State had the power to bring the charge of aggravated kidnaping against Johnson pursuant to § 45-5-303, MCA (1991), when the District Court accepted his plea of guilty. Presented with no facts to the contrary, we hold the State did have the power to charge Johnson with aggravated kidnaping at the time Johnson entered his guilty plea.

¶31 Finally, Johnson argues the District Court did not have jurisdiction to sentence him to more than ten years in prison on the aggravated kidnaping charge. The punishment for

aggravated kidnaping is set forth in § 45-5-303(2), MCA (1991), and states:

> (2) a person convicted of the offense of aggravated kidnaping shall be punished by death or life imprisonment as provided in 46-18-301 through 46-18-310 or be imprisoned in the state prison for a term of not less than 2 years or more than 100 years and may be fined not more than $50,000, unless he has voluntarily released the victim alive, in a safe place, and not suffering from serious bodily injury, in which event he shall be imprisoned in the state prison for a term of not less than 2 years or more than 10 years and may be fined not more than $50,000.

¶32 Johnson claims he should not be sentenced to more than ten years on the aggravated kidnaping charge, because he voluntarily released the victim alive, in a safe place, and not suffering from serious bodily injury. However, Johnson does not provide any facts to support his claim. At the sentencing hearing, Johnson affirmatively acknowledged he was pleading guilty to the charge of aggravated kidnaping. Johnson entered an Alford plea, claiming he was blacked out and had no recollection of the events which formed the basis of the charges against him, thus he offered no evidence to contradict the victim's testimony. Johnson made no claim that he released the victim voluntarily, nor are there any facts in the record to indicate he voluntarily released the victim.

¶33 The record indicates the opposite. The victim escaped from Johnson's van after he fell asleep or passed out. According to her testimony, she untied herself, gathered some clothes, exited the van naked, and ran about 500 yards to where she was out of view of Johnson's van and felt safe enough to dress. This could hardly be considered a voluntary release. Moreover, it could hardly be said that the place was safe. When the victim exited the van, she found her self in a barren area, no other vehicles around, no houses around, and no other people around. She was naked, badly beaten, brutally assaulted, and had just suffered hours of terror by Johnson. Given her condition, the place she found herself after escaping from Johnson's van could hardly be considered safe.

¶34 The record does not reveal any facts that would require the District Court to impose a maximum ten-year sentence for the charge of aggravated kidnaping. Therefore, we hold the District Court did have subject matter jurisdiction to accept Johnson's guilty plea to the charge of aggravated kidnaping and impose a twenty-year prison sentence for the crime.

¶35 For the foregoing reasons, the District Court's order denying Johnson's petition for postconviction relief is affirmed.

/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER

/S/ PATRICIA COTTER

/S/ W. WILLIAM LEAPHART