No. 02-201

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 52

STATE OF MONTANA,

          Plaintiff and Respondent,

   v.

GARY LEE SENN,

          Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and for the County of Missoula, Cause No. DC 88-8294,
The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Kathleen Foley, Boggs & Foley Law Office, Missoula, Montana

      For Respondent:

          Hon. Mike McGrath, Attorney General; John Paulson,
Assistant Attorney General, Helena, Montana

          Fred Van Valkenburg, Missoula County Attorney, Missoula, Montana

Submitted on Briefs:  October 10, 2002

Decided:  March 25, 2003

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1 The State of Montana petitioned the District Court for the Fourth Judicial District in Missoula County, to revoke the suspended sentences of the defendant, Gary Lee Senn, for an alleged violation of a condition to probation. The District Court found that Senn violated a condition of probation and revoked his suspended sentences. Senn appeals the District Court's order and new sentences imposed. We affirm the judgment of the District Court.

¶2 The issues on appeal are:

¶3 1. Did the District Court abuse its discretion when it found that Senn violated a condition of his probation and revoked his suspended sentences?

¶4 2. Did the District Court err by not considering the time served by Senn on probation and expressly allowing or disallowing a credit against his sentences for that amount of time?

¶5 3. Should this Court review the length of the sentence imposed by the District Court for an abuse of discretion?

### FACTUAL AND PROCEDURAL BACKGROUND

¶6 On June 15, 1988, the State charged Senn with two counts of forgery and accountability for forgery, and in the alternative, two counts of theft. Pursuant to an *Alford* plea agreement,[1] Senn pled guilty to both counts of forgery and was sentenced to 20 years in prison with 15 years suspended for each offense. Both sentences were to be served concurrently. Senn's conviction and sentence were affirmed on appeal in *State v. Senn* (1990), 244 Mont. 56, 795 P.2d 973.

---

[1] *See North Carolina v. Alford* (1970), 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162.

¶7 Senn discharged the prison portion of his sentences on April 13, 1992. On December 22, 1994, Senn requested that his probation supervision be transferred to the State of Washington, where he was accepted for supervision on April 17, 1995, pursuant to an interstate compact. Senn moved to Spokane, Washington.

¶8 On May 15, 2000, after Senn served several years on probation in Spokane, Washington, the Missoula County Attorney filed a petition to revoke Senn's suspended sentences based on several alleged violations of the conditions of his probation. Senn was arrested in Washington and was returned to Montana. On September 11, 2000, Senn admitted that he violated some of the terms of probation. The District Court revoked Senn's suspended sentences, sentenced him to 30 days in the Missoula County Jail with credit for time served, and reinstated his probation. The District Court permitted Senn to return to Spokane while the State of Washington considered whether to continue to supervise Senn during the completion of his sentence.

¶9 Senn's conditions of probation included State Rule #4, which required Senn to report to his parole officer, Jennifer Welling, as directed. After meeting with Welling, Senn received a 30-day travel permit to depart to Washington, and returned to Spokane, Washington, sometime in September 2000 to live at his sister's house. His home in Washington had no telephone.

¶10 From September 2000 until March 2001, Senn did not have an assigned probation officer in Washington, but in March 2001, Aaron Cole was assigned as Senn's "temporary supervising officer" while the State of Washington decided whether to continue to supervise

3

Senn. While waiting for a probation officer in Washington, Senn had no contact with Welling, his probation officer in Montana. However, Welling did at one time attempt to contact Senn at a telephone number Senn provided but which had been disconnected.

¶11 After receiving his temporary assignment to Senn, Cole delivered two cards to Senn's residence on March 9, 2001, requesting that Senn meet with him. Senn acknowledged receiving the cards; however, he did not appear as requested on March 12, 2001. He did report to Cole as requested on March 16, 2001, at which time he informed Cole that he had been in the hospital and experienced health problems. Cole found Senn to be credible with regard to his health and noted that Senn appeared in poor health. On March 26, 2001, Senn missed another appointment with Cole to discuss interstate intake.

¶12 On April 2, 2001, Cole provided a report stating that the State of Washington would not agree to supervise Senn. The report stated:

> Senn has failed to show for 2 out of 3 appointments set in March. He failed to show for his Intake appointment as scheduled. However, he has been in and out of the hospital for a collapsed lung (I have not verified through any bills). However, he does appear to be in poor health. The one time he did report to my office, he did not appear to be amenable to his conditions. He was angry with Montana and the whole system in general . . . It does not appear that Senn will follow any rules in WA, as the past has shown.

The report also noted that Senn was arrested for shoplifting, that the arrest was a violation of Senn's probation, and recommended that Senn report to his probation officer in Montana.

¶13 On April 9, 2001, Welling sent a letter to Senn at his sister's address, informing him that the State of Washington refused to supervise him. The letter also informed Senn that he must return to Montana by April 30, 2001, or a warrant would be issued for his arrest and

4

extradition back to Montana. Senn later testified that he did not receive this letter until April 29, 2001.

¶14 On April 27, 2001, without a prior appointment, Senn inexplicably appeared at Cole's office. Cole informed Senn that the State of Washington had denied Senn's request for supervision and that he should contact his probation officer in Montana immediately. Cole told Senn that he could possibly avoid being arrested and have a hearing if he did so. Apparently, Senn did not contact or make an attempt to contact Welling at that time.

¶15 Senn returned to Cole's office on April 30, 2001. Senn told Cole that he had received a letter from Montana ordering him to report to his probation officer on that day. Senn also told Cole that he was not going to go to Montana, but that he wished to resolve the matter. Cole told Senn to contact his probation officer in Montana.

¶16 Senn also told Cole that a warrant for his arrest was outstanding for his failure to appear in court following his arrest for theft in January. That conversation was overheard by a police officer at Cole's office. That officer arrested Senn at his home later that day. After the arrest, Cole called Welling and told her that Senn was currently in custody of the Spokane Police Department.

¶17 Senn was released from Spokane County Jail on or before May 15, 2001. Apparently, Senn attempted to contact Welling and the Montana Department of Corrections by telephone regarding his situation, but was unable to reach either because they would not accept collect calls. Senn did not, however, send any letters to Welling or the Montana Department of Corrections, and Senn did not consult with his attorney regarding his failure to report to

Welling.

¶18 On June 13, 2001, the Missoula County Attorney filed a petition to revoke Senn's suspended sentences on the ground that he violated State Rule #4, which required that he personally report to his probation officer as directed and provide monthly reports. The District Court issued a bench warrant and Senn was arrested on July 15, 2001. Senn waived extradition, was sent back to Montana, and the theft charges in Spokane were dismissed on July 23, 2001. On October 30, 2001, the District Court conducted a probation revocation hearing, at which Welling, Cole, and Senn testified. The District Court found that the State offered sufficient evidence that Senn violated his probation and ordered a dispositional hearing on December 11, 2001, for consideration of Senn's sentence. On December 11, 2001, the District Court sentenced Senn to complete the remaining 15 years of his suspended sentences, with no credit for time served on probation. The District Court issued its judgment on January 18, 2002.

## STANDARD OF REVIEW

¶19 When asked to revoke probation or a suspended sentence, the issue before the District Court is whether it "is reasonably satisfied that the conduct of the probationer has not been what he agreed it would be if he were given liberty." *State v. Averill*, 2001 MT 161, ¶ 22, 306 Mont. 106, ¶ 22, 30 P.3d 1059, ¶ 22 (citations omitted). We review the District Court's decision to determine whether the District Court's decision to revoke a suspended sentence was supported by a preponderance of the evidence, and if so, whether the District Court abused its discretion. *Averill*, ¶ 22.

6

DISCUSSION

ISSUE 1

¶20    Did the District Court abuse its discretion when it found that Senn violated a condition of his probation and revoked his suspended sentences?

¶21    Senn contends that the District Court abused its discretion when it revoked his suspended sentences because there were sufficient facts in evidence to excuse any violation, including that he did not receive the April 9, 2001, letter from Welling until April 29, 2001, his medical condition, his arrest and detention in Washington, his "good faith" belief that he needed to handle his arrest and detention in Washington before he could remedy the situation with his probation in Montana, and that Montana's prior lack of communication with him led him to a "good faith" assumption that he was not in violation of any rule of probation. Senn suggests that had he not been again arrested in July, he would have contacted Montana after he resolved the charges against him in Washington. Senn also contends that Welling's failure to adequately supervise him, as required by § 46-23-1011(3), MCA, should preclude the finding of a violation, or in the alternate, such a harsh sentence.

¶22    The State contends that the District Court's decision to revoke Senn's suspended sentence was not an abuse of discretion because the State sufficiently proved by a preponderance of the evidence that Senn violated one of the conditions of his probation, and that the State did not violate any duty owed to Senn.

¶23    It is without dispute that Senn failed to report to Montana as required by Welling, his probation officer. It is also undisputed that Welling sent the order to appear and that Senn

7

did, in fact, receive the notice on or before April 29, 2001. Senn's own testimony further established that, despite having notice to appear or contact Welling, Senn failed to do so, even when released on bail, from the time of his arrest on April 30, 2001, until his subsequent arrest on July 15, 2001. The record clearly establishes that Senn did violate one of the conditions that he agreed to follow while on probation, namely State Rule #4, which provided: "[y]ou are required to personally report to your Probation/Parole Officer as directed."

¶24    While Senn has provided this Court and the District Court with evidence regarding his health problems, his poverty, his arrest(s) in Washington, and his "good faith" assumption that matters in Montana could be resolved after he had resolved the criminal matters in Washington, this evidence does not excuse Senn's violation of a term of probation. Senn's testimony at the revocation hearing established that he did not contact Welling despite notice from her letter, and that he was aware prior to his arrest in April 2001 that Welling's office would not accept collect phone calls. Senn does not provide any authority to support his contention that his "good faith" should excuse the fact that he violated a rule of probation. Senn admitted that he had an attorney, but failed to discuss the Montana situation with his attorney. Furthermore, it was Senn's own conduct, *i.e.* his failure to appear at a court date in Spokane which prevented him from returning to Montana on April 30, 2001.

¶25    Nor was Senn's violation excused because of Welling's alleged failure to advise and consult with Senn pursuant to § 46-23-1011(3), MCA. While it is conceded by the State that Welling had no contact with Senn and that Senn had no probation supervision until Cole's

8

assignment in March, Senn provides no authority to support his contention that these facts excused his compliance with a known condition of probation. Furthermore, the circumstances suggest the contrary. When Welling did send a letter to Senn ordering him to report, Senn failed to contact her by phone or by mail for at least two and one-half months. Even when Senn did have supervision by Cole, Senn failed to appear at two out of three scheduled meetings, including his interstate compact intake. Even when supervised, Senn failed to comply with his probation officers' requests.

¶26 Senn does not suggest that the District Court's findings are clearly erroneous. We conclude that the District Court did not abuse its discretion when it revoked Senn's suspended sentences.

ISSUE 2

¶27 Did the District Court err by not considering the time served by Senn on probation and expressly allowing or disallowing a credit against his sentences for that amount of time?

¶28 Senn contends that the District Court erred when it failed to expressly consider at the revocation hearing whether to give Senn credit for time that elapsed while he was on parole. The State contends that the District Court did provide reasons in its written order pursuant to § 46-18-203(7)(b), MCA, why it would not grant Senn credit for the time he served on probation and that the District Court correctly considered Senn's prior conduct and arrests while on probation when it declined to give him credit.

¶29 Section 46-18-203(7)(b), MCA, provides:

> If a suspended or deferred sentence is revoked, the judge shall consider any elapsed time and either expressly allow all or part of the time as a credit

9

against the sentence or reject all or part of the time as a credit. The judge shall state the reasons for the judge's determination in the order . . . .

It is undisputed that in its January 18, 2002, written order the District Court explicitly rejected credit for the time that Senn was on parole. The District Court stated:

Due to the Defendant's failure to comply with the terms and conditions of his suspended sentence while under the supervision of the Department of Probation and Parole, *the Court finds that he is not entitled to receive, and shall not receive, credit for any time between the date of his conviction and the date of this Order*, except that he shall receive credit . . . for two hundred seven (207) days jail time which he has previously served. [Emphasis added.]

The District Court provided ten reasons for its Judgment. We conclude that the District Court satisfied the express requirements set forth in § 46-18-203(7)(b), MCA, and did not abuse its discretion.

ISSUE 3

¶30    Should this Court review the length of the sentence imposed by the District Court for an abuse of discretion?

¶31    Senn requests this Court to overrule, in part, our holding in *State v. Baisch*, 1998 MT 12, 287 Mont. 191, 953 P.2d 1070, where this Court stated it will review sentences only for their legality and "[w]e will not review sentences for mere inequity or disparity; that task is left to the Sentence Review Division." *Baisch*, ¶ 15. Senn contends that when revoking a suspended sentence, the District Court does not have "completely unbridled discretion," quoting this Court's decision in *State v. Downing* (1979), 181 Mont. 242, 245, 593 P.2d 43, 45 (*overruled by State v. Docken* (1995), 274 Mont. 296, 908 P.2d 213), and that it should not punish Senn for his "innocuous mistakes." Senn further contends that our holding in

10

*State v. Lundquist* (1992), 251 Mont. 329, 825 P.2d 204, and *State v. Lee*, 2001 MT 176, 306 Mont. 173, 31 P.3d 998, permits this Court to review a District Court's sentence for proportionality.

¶32    None of the authority that Senn offers this Court merits overruling *Baisch*. First, in addition to Senn's failure to note in his brief that *Downing* was overruled by *Docken*, the issue in *Downing* was whether or not the District Court had the *jurisdiction* to impose the particular sentence at issue in that case, and we concluded that the District Court did not have jurisdiction. *See Downing*, 181 Mont. at 245, 593 P.2d at 45. The District Court's jurisdiction in this case is not at issue and *Downing* is not applicable.

¶33    *Lundquist* is also inapplicable to this case. In *Lundquist*, this Court determined that the District Court abused its discretion when it revoked Lundquist's suspended sentence because we concluded that Lundquist did not violate his terms of probation. *See Lundquist*, 251 Mont. at 332-33, 825 P.2d at 206 ("To the extent that revocation was based on Lundquist's failure to pay full fees, we conclude that it was unreasonable . . . To the extent revocation was based on Lundquist's reasonable expression of his genuine religious beliefs, it appears to contravene his right to free exercise of religion.") Unlike *Lundquist*, we concluded that Senn did violate a term of probation.

¶34    Finally, in *Lee*, we considered whether a district court violated an inmate's right to due process where the inmate had failed to meet a parole and probation condition (*i.e.* obtain sex offender treatment), that was impossible to complete prior to his release, due to institutional delay alone. *Lee*, ¶ 15. We concluded that the district court could revoke the

11

sentences of such inmates under these circumstances, but we remanded the case to the district court to make findings with respect to whether there were "reasonable alternative measures, other than continued incarceration, that are adequate to meet the State's interest in Lee's punishment, deterrence, or rehabilitation." *Lee*, ¶ 23. In other words, this Court in *Lee* considered the legality of the revocation of probation and parole where the conditions were impossible to meet–we did not review whether the district court's reimposed sentence was disproportionate. We affirm our holding in *Baisch*, and conclude pursuant to that holding, we will not review a sentence for its proportionality. The proper forum in which to raise that issue is the Sentence Review Division of the Supreme Court.

¶35     For the foregoing reasons, the judgment of the District Court is affirmed.


                                        /S/ TERRY N. TRIEWEILER

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ JIM RICE

12