No. 96-050

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

STATE OF MONTANA,

     Plaintiff and Respondent,

v.

STEVE HARDY,

     Defendant and Appellant.

**FILED**

OCT 22 1996

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Third Judicial District,
In and for the County of Deer Lodge,
The Honorable Ted Mizner, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Jeffrey T. Renz, Attorney at Law, Rachel A. Clark,
Intern, Montana Defender Project, School of
Law, University of Missoula, Missoula, Montana

     For Respondent:

          Hon. Joseph P. Mazurek, Attorney General,
John Paulson, Assistant Attorney General,
Helena, Montana

          Edward G. Beaudette, Anaconda-Deer Lodge
County Attorney, Anaconda, Montana

Submitted on Briefs:  July 18, 1996

Decided:  October 22, 1996

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

The petitioner, Steven D. Hardy, filed a petition for post-conviction relief in the District Court of the Third Judicial District in Deer Lodge County. The District Court denied the petition. Hardy appeals from that decision. We affirm the judgment of the District Court.

The issue on appeal is whether the District Court erred when it denied Hardy's petition for post-conviction relief.

## FACTUAL BACKGROUND

In 1989, Steven D. Hardy was charged by information with seven counts of burglary. Pursuant to a plea agreement, he pled guilty to four of those counts. The District Court sentenced him to four concurrent terms of ten years in prison, with nine years suspended. In 1990, he was released on probation to serve the suspended portion of his sentence; and pursuant to §§ 46-23-1101 to -1106, MCA, the "Interstate Compact," Montana authorities transferred the supervision of his probation to the State of Utah.

In 1991, Hardy was arrested in Utah, and charged with two counts of felony assault. At that time, he contacted David Robbins, his Montana probation officer. In an affidavit submitted in this proceeding, Robbins stated that he advised Hardy that the State of Montana's general policy is that probation revocation proceedings are not initiated if the crimes are misdemeanors and the supervising state agrees to continue supervision. Hardy ultimately pled no contest to two reduced charges of misdemeanor

assault on a police officer. Prior to his sentencing hearing, however, he was again arrested and charged with aggravated assault. Utah probation officials subsequently informed the State of Montana that they were no longer willing to supervise Hardy's probation.

Based on the assault convictions and the State of Utah's refusal to continue the supervision of Hardy's probation, the Deputy County Attorney for Deer Lodge County, Montana, filed an application for a bench warrant and a petition to revoke Hardy's suspended sentence. Attached to the petition were documents regarding the Utah criminal proceedings, and an interstate case report in which the Utah Department of Corrections requested that Montana extradite Hardy after adjudication of the Utah charges. Hardy was sentenced in Utah, and subsequently returned to Montana for his probation revocation hearing.

Prior to the probation revocation hearing, the District Court received and filed letters from Hardy in which he set forth facts which corroborated his guilty pleas to the Utah charges. Then, at the April 1992 probation revocation hearing, Hardy appeared, with counsel, and admitted the allegations in the State's petition.

The District Court: (1) revoked the suspended portion of Hardy's sentence; (2) sentenced him to four concurrent terms of nine years; and (3) ordered that he shall not receive credit for his "street time" (the two years he spent on probation in Utah).

In November 1994, Hardy filed a petition for post-conviction relief. On December 14, 1995, the District Court denied the

3

petition, and entered its findings of fact, conclusions of law, and order.

## DISCUSSION

Did the District Court err when it denied Hardy's petition for post-conviction relief?

The standard of review of a district court's findings of fact is whether they are clearly erroneous. *Daines v. Knight* (1995), 269 Mont. 320, 324, 888 P.2d 904, 906. The standard of review of a district court's conclusions of law is whether the court's interpretation of the law is correct. *Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

On appeal, Hardy contends that the District Court erred when it denied his petition for post-conviction relief. He claims that the revocation of his probation was invalid, and that, therefore, his probation should now be reinstated. Specifically, he asserts that the revocation of his probation was invalid for the following three reasons: (1) he was denied a preliminary on-site hearing; (2) Dave Robbins, his Montana probation officer, assured him that his probation would not be revoked for misdemeanor convictions; and (3) the District Court arbitrarily denied him credit for his "street time" when it failed to sufficiently set forth, in the record, its reasons for the denial.

### 1. THE DENIAL OF A PRELIMINARY ON-SITE HEARING

After Utah officials refused to continue the supervision of Hardy's probation, he was extradited and returned to Montana for

4

his probation revocation hearing. Prior to his return, however, he was denied a preliminary on-site hearing. He asserts that this denial violated his rights pursuant to (1) the Due Process Clause of the Fourteenth Amendment of the United States Constitution, and (2) § 46-23-1103, MCA. We will address both of these alleged violations separately.

## A. DUE PROCESS

In *Morrissey v. Brewer* (1972), 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484, the U.S. Supreme Court held that a parolee's liberty involves significant values entitled to the protection of the due process clause of the Fourteenth Amendment; and that termination of that liberty requires an informal hearing to insure that the finding of a parole violation is based on sufficient facts to support the revocation. In *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d 656, the U.S. Supreme Court extended and applied the principles announced in *Morrissey* to probation revocation proceedings.

In *State v. Howell* (1986), 222 Mont. 136, 720 P.2d 1174, we analyzed the due process requirements established by *Morrissey* and *Gagnon* in the context of a Montana probation revocation proceeding. Howell was a Montana probationer under supervision in Idaho when he was arrested and jailed for assault. A petition to revoke probation was filed, and he was returned to Montana. He later claimed that the failure to conduct a preliminary on-site hearing

5

in Idaho denied him due process as required by *Morrissey* and *Gagnon*. We rejected his claim, and held that he "was not deprived of a liberty interest by the failure of the authorities to provide for him a preliminary or on-site hearing." *Howell* 222 Mont. at 140, 720 P.2d at 1177. We based our holding on our determination that:

> [T]he purpose of the on-site preliminary hearing and the eventual full-blown hearing on revocation is to provide due process to the parolee, *and to protect his liberty interest* at the time. In this case, Howell did not have a liberty interest at the time of the proceedings against him for the revocation of his parole. He was at the time under arrest in Idaho by reason of a charge against him for assault. His transfer by the Idaho authorities to the Montana authorities while he was still under arrest did not deprive him of any liberty interest since his detention by the Idaho authorities was at all times lawful.

*Howell*, 222 Mont. at 139-40, 720 P.2d at 1176.

Hardy was charged with three offenses in Utah. He entered pleas of no contest, was convicted of each charge, and was sentenced accordingly. He was serving that sentence at the time the Montana revocation proceedings were initiated. At the time he was extradited to Montana, he was detained in the Salt Lake County Jail, pursuant to his one-year sentence for the Utah convictions. Nothing in the record suggests that he was or would have been released from jail in Utah had it not been for his extradition and transfer to Montana authorities. Based on our prior holding in *Howell*, therefore, Hardy's right to due process was not infringed upon by his extradition to Montana and the commencement of the

6

revocation proceedings in Montana. Accordingly, a preliminary hearing was not required.

We hold that the District Court was correct when it concluded that the failure to conduct a preliminary on-site hearing did not violate Hardy's due process rights pursuant to the Fourteenth Amendment.

### B. RIGHTS PURSUANT TO § 46-23-1103, MCA

Section 46-23-1103, MCA, provides as follows:

> (1) Where supervision of a . . . probationer is being administered pursuant to the interstate compact for the supervision of . . . probationers, the appropriate judicial or administrative authorities in this state shall notify the compact administrator of the sending state whenever in their view consideration should be given to retaking or reincarceration for a . . . probation violation.
> (2) Prior to the giving of any such notification, a hearing shall be held in accordance with this part within a reasonable time unless such hearing is waived by the . . . probationer. Following termination of any such hearing, the appropriate officer or officers of this state shall, as soon as practicable, report to the sending state, furnish a copy of the hearing record, and make recommendations regarding the disposition to be made of the . . . probationer by the sending state . . . .

When the language of a statute is plain and unambiguous, the statute speaks for itself and no further interpretation is required. *In re Estate of Langendorf* (1993), 262 Mont. 123, 125, 863 P.2d 434, 436. The language of § 46-23-1103(2), MCA, plainly and unambiguously requires a preliminary on-site hearing. Despite the statute's clear mandate, Hardy was denied a hearing, and his rights pursuant to the statute were, in fact, violated. The District Court, therefore, erred in 1992 when it did not require an on-site

7

hearing prior to Hardy's return to Montana. However, for reasons that follow, the District Court's failure to require a preliminary on-site hearing was not prejudicial to Hardy's rights, and therefore, did not constitute reversible error. *See* § 46-20-701(1), MCA. For that reason, the District Court's refusal to grant post-conviction relief on the ground that Hardy was denied a preliminary on-site hearing in contravention of § 46-23-1103(2), MCA, must be affirmed. *See* Rule 61, M.R.Civ.P.

Our holding today should not be interpreted as diminishing the importance of § 46-23-1103(2), MCA. In fact, most probation revocation proceedings initiated pursuant to §§ 46-23-1101 to -1106, MCA, the "Interstate Compact," will require a preliminary on-site hearing. Preliminary on-site hearings are necessary to allow a probationer to contest the reasons for the revocation of his or her probation, and to develop a record when the evidence is fresh and when it is readily available.

For example, in *Fisher v. Crist* (1979), 182 Mont. 124, 594 P.2d 1140, we held that the failure to provide Fisher with a preliminary on-site hearing violated his rights pursuant to § 46-23-1103, MCA. Fisher was a Montana probationer under the supervision of the State of Washington. Montana authorities sought to revoke his probation based on: (1) his failure to report to his Washington probation officer; and (2) his failure to cooperate with the Seattle Indian Alcohol Program. We determined that Fisher should have received a preliminary on-site hearing because,

8

[h]e was told that he was charged with two violations, both of which he contested and should have been the subject of a probable cause hearing in Seattle where he could have had the opportunity to present witnesses and, perhaps, refute the allegations.

*Fisher*, 182 Mont. at 128, 594 P.2d at 1142.

In this case, however, a preliminary on-site hearing would have contributed nothing to a determination of whether Hardy had violated the terms of his probation. Unlike Fisher, Hardy's probation violations (which were the basis for revocation) were not disputed, and probable cause for the initiation of revocation proceedings clearly existed. Essential to our holding is the fact that Hardy *pled no contest* to three offenses in Utah. Additionally, he wrote letters to the District Court which corroborated his guilt; and, during his probation revocation hearing, he admitted the allegations in the State's petition. He had, as evidenced by his no contest pleas and admissions, indisputably violated the conditions of his probation, and a preliminary on-site hearing could not have led to any other finding.

Based on the facts of this case, the failure to provide Hardy with a preliminary on-site hearing did not prejudice his substantial rights. Accordingly, we hold that the District Court was correct when it concluded that Hardy is not entitled to post-conviction relief.

2. ASSURANCES FROM HIS PROBATION OFFICER

After his arrests in Utah, Hardy faced three felony charges. Ultimately, however, he pled no contest to three misdemeanor

9

charges and avoided felony convictions. Hardy asserts that Dave Robbins, his Montana probation officer, assured him that his probation would not be revoked for misdemeanor convictions. He contends that, based on those assurances, his probation should not have been revoked.

Dave Robbins, however, contended that he did not make any unconditional assurances or guarantees; rather, he spoke generally about the State of Montana's procedures. In his affidavit, Robbins stated:

> I informed . . . Hardy that our general policy was that if a misdemeanor crime was committed and the supervising state agreed to continue supervision that no revocation proceeding is initiated . . . [t]hat decisions regarding the filing of a Petition for Revocation are within the exclusive discretion of the county attorney and my responsibility is only to report infractions and make recommendations.

The District Court's findings and conclusions are based on an acceptance of Robbins' version of his conversations with Hardy and his Utah attorney.

Furthermore, Montana officials did not participate in the plea negotiations between Hardy and the State of Utah. Finally, Hardy knowingly, voluntarily, and with the assistance of counsel entered into a no contest plea agreement which included the following language:

> I know and understand the nature and the elements of the charges pending against me . . . no one has made any promises or threats to induce me to plead guilty or no contest. My plea of guilty or no contest today is my own voluntary decision.

10

We conclude that the District Court's findings regarding Robbins' representations to Hardy were not clearly erroneous, and that the District Court's conclusion that the State was not estopped from proceeding with revocation proceedings based on those representations, was correct.

### 3. THE DENIAL OF CREDIT FOR "STREET TIME"

When the District Court sentenced Hardy, it denied him credit for his "street time" (the two years he spent in Utah on probation). Hardy asserts that the District Court arbitrarily denied him credit for his "street time" when it failed to sufficiently set forth its reasons for the denial in the record. Specifically, he alleges that the District Court did not comply with § 46-18-201, MCA, which states in relevant part:

> (4) If any restrictions or conditions imposed under subsection (1)(a) or (1)(b) are violated, the court shall consider any elapsed time and either expressly allow part or all of it as a credit against the sentence or reject all or part as a credit. The court shall state its reasons in the order . . . .

The record, however, does not support Hardy's contention. In its amended judgment, the District Court stated:

> 7) That the reasons for this sentence are the Defendant's age, past record of numerous convictions, the Defendant's inability to stay out of trouble when not incarcerated, and the serious nature of the crimes committed in Utah and the four (4) underlying Burglary charges on which the defendant was convicted in this Court.

The denial of credit for "street time" is an express provision of Hardy's sentence. The reasons for the sentence, therefore, include the reasons for the denial of credit for "street time."

11

The District Court adequately considered § 46-18-201, MCA, and sufficiently stated its reasons when it denied Hardy credit for his "street time." Accordingly, we hold that the District Court was correct when it concluded that Hardy was not arbitrarily denied credit for his "street time."

We hold that the District Court's findings of fact were not clearly erroneous, and that its conclusions of law were correct. Accordingly, the judgment of the District Court is affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

12

October 22, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Jeffrey T. Renz
Rachel Clark, Intern
Montana Defender Project
School of Law
University of Montana
Missoula, MT 59812

Ed Beaudette
Anaconda-Deer Lodge County Attorney
800 South Main
Anaconda, MT 59711-2999

Hon. Joseph P. Mazurek, A. G.
John Paulson, Assistant
215 N. Sanders
Helena, MT  59620

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _D. Gallagher_
Deputy