FILED

February 9 2011

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 09-0522

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 283A

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

ROLAND DEE TIREY,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Eleventh Judicial District,
               In and For the County of Flathead, Cause No. DC 96-144(B)
               Honorable Katherine R. Curtis, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Joslyn Hunt, Chief Appellate Defender; Eileen A. Larkin, Assistant
          Appellate Defender; Helena, Montana

      For Appellee:

          Steve Bullock, Montana Attorney General; Sheri K. Sprigg,
          Assistant Attorney General; Helena, Montana

          Ed Corrigan, Flathead County Attorney; Kalispell, Montana

          Submitted on Briefs:  September 8, 2010

                    Decided:  December 30, 2010

Filed:

_____
                        Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Roland Tirey (Tirey) appeals from the 2009 Order of Revocation and Judgment of the Eleventh Judicial District Court, Flathead County.

¶2 We remand for further proceedings consistent with this opinion.

¶3 On appeal, Tirey raises the following issues:

¶4 **1. Did the District Court abuse its discretion in revoking Tirey's probation?**

¶5 **2. Did the District Court act outside statutory parameters in incorporating 13 probation conditions into Tirey's sentence?**

¶6 **3. Did the District Court act outside statutory parameters in designating Tirey a Level II Sexual Offender?**

¶7 **4. Did the District Court act outside statutory parameters by failing to expressly state the reason why it did not credit Tirey's time spent on probation?**

## FACTUAL AND PROCEDURAL BACKGROUND

¶8 Tirey sexually assaulted a young woman multiple times in 1996. He pled guilty to felony sexual assault that same year. In 1997, Tirey was sentenced to 50 years in Montana State Prison with 25 years suspended.

¶9 Tirey was instructed to register as a Sexual Offender, but the court did not specify a tier level. Tirey was paroled in 2004. His parole was revoked in 2005 and he returned to prison to complete the unsuspended portion of his sentence. On April 15, 2008, the Department of Corrections designated Tirey a Level I Sexual Offender in anticipation of discharge. He was released to serve the suspended portion of his sentence on November 10, 2008.

¶10 Tirey's probation officer, Sandra Fairbank (Fairbank), met with him on November 12, 2008 to explain the terms of his parole. Tirey was required to, among other things, (1) get a job right away, (2) report to his probation officer weekly, and (3) get into sexual offender treatment in two weeks.

¶11 Tirey claims that after November 12, 2008, he attempted to reach Certified Sexual Offender Treatment Specialist, Lindsay Clodfelter (Clodfelter). He claims that he had trouble contacting Clodfelter and reaching her office because he was unaware of the location and did not have directions. Fairbank reminded Tirey that he needed to be in treatment in two weeks and that he would need to start a formal job search if he had not found a job in a few days.

¶12 Tirey missed his scheduled sexual offender treatment appointments on November 20, 2008 and November 25, 2008. Fairbank then put Tirey on 72 hour hold. At this time, Fairbank gave Tirey job log forms which he needed to begin filling out. Also during that time, Fairbank spoke with Clodfelter and looked at other supervision options for Tirey. Tirey was released from custody on November 29, 2008, and was instructed to report to his probation officer as soon as possible.

¶13 Tirey did not report to Fairbank until December 2, 2008. At that time, he had not completed any job logs and claimed to have an appointment with Clodfelter. Tirey did not attend his appointment. Clodfelter then classified Tirey as non-compliant with the sexual offender treatment program.

¶14 On December 3, 2008, Tirey did not appear for his weekly appointment with Fairbank. She called him and he claimed that he was in a job interview and would make it back to town if he could. Tirey alleges that he ran out of gas outside of town and left a message with Fairbank. Fairbank started looking for Tirey. Tirey also called Clodfelter and told her that he needed to come into her office or he would be thrown in jail. Clodfelter scheduled an appointment for noon that day. Fairbank arrested Tirey when he arrived at Clodfelter's office.

¶15 Tirey offers a number of excuses for violating his probation, including that he ran out of gas, job logs were too difficult to complete, his lack of medication was making him feel sick, Clodfelter had not called him back for a few days, and a job interview prevented him from getting to a meeting.

¶16 The county attorney filed a petition for revocation of Tirey's probation. Fairbank filed an affidavit in support of modifying the conditions of Tirey's suspended sentence and heightening his sexual offender status to Level II.

¶17 The District Court found that Tirey had violated conditions of his parole by failing to (1) complete required job logs, (2) report to his probation officer as directed, and (3) comply with all recommendations for outpatient sexual offender treatment.

¶18 On July 24, 2009, the District Court revoked Tirey's probation and sentenced him to 25 years at Montana State Prison with seven years suspended. Tirey was not given any credit for time served on probation. The District Court also designated Tirey as a Level II Sexual Offender and ordered that 13 probation conditions be integrated into his current suspended sentence conditions.

## STANDARD OF REVIEW

¶19 We review a district court's revocation of a suspended sentence for abuse of discretion. *State v. Rudolph*, 2005 MT 41, ¶ 9, 326 Mont. 132, 107 P.3d 496. We review a criminal sentence for legality only, that is, whether the sentence falls within the statutory parameters. *State v. Kotwicki*, 2007 MT 17, ¶ 5, 335 Mont. 344, 151 P.3d 892.

## DISCUSSION

¶20 **1. Did the District Court abuse its discretion in revoking Tirey's probation?**

¶21 Where the judge finds that the offender has violated the terms and conditions of the suspended sentence, the judge has the authority to revoke the suspended sentence. *Rudolph*, ¶ 13. A single violation of the terms and conditions of a sentence is sufficient to support a court's revocation of that sentence. *Id.* In *State v. Senn*, 2003 MT 52, ¶ 23, 314 Mont. 348, 66 P.3d 288, we upheld the revocation of a suspended sentence where defendant failed to meet personally with his probation officer as required. Defendant offered numerous excuses including that he had to go to the hospital and did not receive contact letters. *Id.* at ¶ 21. We affirmed the district court's revocation of Senn's suspension and return to incarceration because Senn's explanation of his health, poverty, and "good faith" effort to comply with probation were insufficient to excuse Senn's violation of a term of probation. *Id.* at ¶ 24.

¶22 In the case before us, the District Court appropriately revoked Tirey's suspension because he violated the conditions of his probation in three ways. Tirey failed to report to his probation officer, submit job logs, and begin sexual offender treatment. Tirey

contends that his failure to meet the conditions of his parole was out of his control and largely the fault of his probation officer who he argues made unreasonable demands. Tirey relies on *State v. Lee*, 2001 MT 176, ¶ 21, 306 Mont. 173, 31 P.3d 998, and argues that his probation violations were not a product of his willfulness; therefore, he is entitled to an evaluation of alternatives to incarceration.

¶23    In *Lee*, defendant's suspended sentence was conditioned on completing a sexual offender treatment program while incarcerated. *Id.* at ¶ 5. Lee spent over three of his five years of incarceration on a wait list for the various levels of the sexual offender program. *Id.* at ¶ 6. His treatment was further delayed by a sit down strike. *Id.* Despite substantial delays, Lee completed phase one and nearly phase two (the final phase), of sexual offender treatment by his release date. *Id.* We found that when the circumstances are such that failure to complete a condition of probation is solely the fault of the State, due process requires the trial court to consider adequate alternatives to incarceration. *Id.* ¶ 23.

¶24    Unlike *Lee*, Tirey's failure to comply with probation conditions is not anyone's fault but his own. Tirey's excuses are similar to those offered by the defendant in *Senn*. Regarding his December 3, 2008 appointment with Fairbank, Tirey claims that he had insufficient gas to reach the appointment even though he chose to stop at a job interview on his way into town that morning. Tirey alleges that he did not attend treatment because he was unable to find Clodfelter's office. Finally, Tirey's contention that the job log requirement was unreasonable does not establish that the requirement was impossible; thus his failure to complete and turn in job logs was his own fault. Tirey also argues that

6

his poverty and the extreme weather conditions contributed to his noncompliance. However, none of Tirey's excuses establish, as the defendant did in *Lee*, that his noncompliance was not of his own volition. Indeed, the District Court noted a particular frustration with Tirey's unwillingness to accept responsibility for any of his violations. Because we conclude that evidence supports the District Court's determination that Tirey willfully violated conditions of his probation, the District Court did not abuse its discretion in revoking Tirey's suspended sentence.

¶25 **2. Did the District Court act outside statutory parameters in incorporating 13 probation conditions into Tirey's sentence?**

¶26 The law in effect at the time an offense is committed controls as to the possible sentence for the offense, as well as the revocation of that sentence. *State v. Tracy*, 2005 MT 128, ¶ 16, 327 Mont. 220, 113 P.3d 297. Tirey committed his offense in 1996. Therefore, the 1995 MCA is the applicable statute. Section 46-18-203(7)(c), MCA (1995), states that the court may "revoke the suspension of sentence and require the defendant to serve either the sentence imposed or any lesser sentence[.]" *Id.*

¶27 In determining whether the sentence at revocation is the "same or lesser" than the sentence originally imposed under § 46-18-203(7)(c), MCA (1995), we must look beyond the fact that new conditions were imposed at revocation. In *Tracy*, ¶ 20, and *State v. Striplin*, 2009 MT 76, ¶ 32, 349 Mont. 466, 204 P.3d 687, we declined to uphold a district court sentence where the court revoked the defendant's sentence and imposed, by way of additional conditions, additional time in prison. Our holding in *State v. White*, ¶ 30, 2008 MT 464, 348 Mont. 196, 199 P.3d 274, *State v. Brister*, 2002 MT 13, ¶ 27,

308 Mont. 154, 41 P.3d 314, and *State v. Rudolph*, 2005 MT 41, ¶¶ 17-18, 326 Mont. 132, 107 P.3d 496, notwithstanding, the mere fact that the original sentence imposed had only conditions A, B, and C while the sentence at revocation has conditions A, B, C, D, and E does not necessarily mean that the sentence at revocation is greater. To the extent *White*, *Brister*, and *Rudolph* suggests otherwise, they are overruled.

¶28 A proper analysis requires that we look at the substance of the conditions to determine whether they are punitive in nature. For example, whether additional conditions require the defendant to spend more time incarcerated or that defendant serve his time at Montana State Prison rather than with the Department of Corrections. *See State v. Therriault*, 2000 MT 286, ¶¶ 38-47, 302 Mont. 189, 14 P.3d 444 (wherein we discussed that participation in an intensive supervision program overseen by the Department of Corrections does not change the offender's status from probationer to inmate). On the other hand, a condition that the defendant attend Alcoholics Anonymous sessions is not punitive in nature. Secondly, the new conditions must be reviewed in the context of the entire sentence. That is, whether the defendant's overall sentence is the same or whether the defendant is being sentenced to more or less punishment than the sentence originally imposed.[1]

---

[1] We note that in *Rudolph*, although we erroneously concluded that the mere adding of new conditions was necessarily punitive, we could have reached the same result on the basis that the overall sentence had been increased. Rudolph was originally sentenced to five years with all but 139 days suspended. *Rudolph*, ¶ 6. At revocation, he was sentenced to five years with all but 20 months suspended. *Id*. at ¶ 8. Therefore, the sentence imposed at revocation in *Rudolph* exceeded the original sentence in overall punishment.

¶29 Although the 2009 sentence requires the integration of 13 probation conditions, many of those conditions merely reiterate the conditions of Tirey's original suspended sentence. Unlike the conditions added in *Tracy* and *Striplin*, the 2009 conditions which could be considered "new" are not punitive in nature. Additionally, Tirey's 2009 sentence amounts to a substantial reduction in overall punishment when compared to the 1997 sentence. Whereas the 1997 sentence required Tirey to serve 50 years in Montana State Prison with 25 years suspended, the 2009 sentence only imposes 25 years, with seven suspended. Even when the conditions imposed by the District Court are added to Tirey's sentence, the 2009 sentence is overall less than the 1997 sentence and therefore within 1995 MCA sentencing parameters.

¶30 **3. Did the District Court act outside statutory parameters in designating Tirey a Level II Sexual Offender?**

¶31 According to § 46-23-509(5), MCA:

> [I]f, at the time of sentencing, the sentencing judge did not apply a level designation to a sexual offender . . . the [Department of Corrections] shall designate the offender as level 1, 2, or 3 when the offender is released from confinement.

In this case, the sentencing court did not apply a sex offender level designation to Tirey. Thus, the Department of Corrections had statutory authority to issue a designation. The Department designated Tirey a Level I Sexual Offender on April 15, 2008. Therefore, the District Court erred in subsequently issuing a Level II designation at revocation.

¶32 **4. Did the District Court act outside statutory parameters by failing to expressly state the reason why it did not credit Tirey's time spent on probation?**

9

¶33 Section 46-18-201(4), MCA (1995) requires that the sentencing judge consider any elapsed time and either expressly allow all or part as credit or reject all or part as credit. The judge must state the reasons in the order. *Id.* As we held in *State v. Hardy*, 278 Mont. 516, 524, 926 P.2d 700, 705 (1996), where "[t]he denial of credit for 'street time' is an express provision of [a defendant's] sentence," a statement of reasons for the sentence "include[s] the reasons for the denial of credit for 'street time.'" In this case, the District Court's judgment includes a broad statement of reasons for its sentence upon revoking Tirey's probation. In its sentencing order, the District Court stated:

> In fashioning the following sentence, the Court has considered the nature of the violations of probation conditions, particularly his failure to participate in sex offender treatment as recommended. The Defendant fails to take responsibility for not attending treatment as directed and offers incredible excuses for when he does miss treatment appointments.

This statement by the District Court is similar to the statement of reasons we upheld in *Hardy*. On the basis of that authority, we conclude that the District Court acted within statutory parameters in stating its reasons for not crediting the time Tirey spent on probation.

¶34 We remand to the District Court for entry of judgment consistent with this opinion.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ JIM RICE

10

Justice James C. Nelson, specially concurring.

¶35    I concur with the result reached by the Court in this case. In my view, based on the totality of the sentence at issue here, Tirey received a "lesser" sentence than that originally imposed, for purposes of § 46-18-203(7)(c), MCA (1995). Moreover, while I think I understand the nuance intended by the Court in overruling *State v. White*, 2008 MT 464, 348 Mont. 196, 199 P.3d 274, *State v. Brister*, 2002 MT 13, 308 Mont. 154, 41 P.3d 314, and *State v. Rudolph*, 2005 MT 41, 326 Mont. 132, 107 P.3d 496 (*see* Opinion, ¶ 27), I believe the Court's opinions in those cases were, nevertheless, correct based on the facts of the cases.[2]

¶36    I am not entirely in agreement with the Court that, other things being equal, adding to a sentence a condition that might be denominated as "non-punitive" keeps the sentence within the "same" or "lesser" requirement of § 46-18-203(7)(c), MCA (1995). Opinion, ¶ 28. "Rehabilitative" or "non-punitive" conditions—arguably, for example, mandatory attendance at Alcoholics Anonymous meetings—still make the defendant's sentence

---

[2] In *White*, for example, we observed that the revocation sentence was the same in terms of the incarceration time. *White*, ¶¶ 18, 23. However, the court added conditions to that sentence—White was required to attend Alcoholics Anonymous meetings four times a week and to participate in counseling as deemed appropriate by her probation officer, including counseling for chemical dependency and financial difficulties. *White*, ¶ 5. Hence, White did not receive a "lesser" sentence as required by § 46-18-203(7)(c), MCA (1993). *Brister*, moreover, did not even involve the issue of a "lesser" sentence, since the 1983 revocation statute allowed the district court either to revoke the suspended sentence and order the defendant to serve the remainder of his prison term, or to continue the suspended sentence "under the original terms." *Brister*, ¶ 27. Thus, the district court had no authority to continue Brister's suspended sentence conditioned upon multiple new conditions and terms not contained in his original sentence. *Brister*, ¶ 27.

more burdensome[3] and provide an additional pitfall that the probationer must negotiate if he is to maintain his probationary status. Indeed, many of the probation revocation cases we review are grounded in the probationer's failure to abide by one or more of the ever-growing laundry list of "rehabilitative" or "non-punitive" conditions that sentencing courts, probation officers, and the Department of Corrections cram into sentencing orders.

¶37 I agree with the result of the Court's decision here. However, I will continue to apply the *Mount* test, on a case-by-case basis, in the future.

¶38 I specially concur.

/S/ JAMES C. NELSON

---

[3] *See State v. Mount*, 2003 MT 275, ¶¶ 24-25, 317 Mont. 481, 78 P.3d 829 (reaffirming the Court's adherence to the three-prong ex post facto test, the second prong of which is triggered when the punishment for a crime is made "more burdensome").