FILED

November 25 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0137

DA 14-0137

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 313N

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

JOEL BONIEK,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Sixth Judicial District,
In and For the County of Park, Cause No. DC 2013-40
Honorable Brenda R. Gilbert, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Joel Boniek (self-represented); Livingston, Montana

       For Appellee:

           Timothy C. Fox, Montana Attorney General; C. Mark Fowler, Assistant
Attorney General; Helena, Montana

           Kathleen Carrick, Deputy Park County Attorney; Livingston, Montana

Submitted on Briefs:  October 1, 2014
Decided:  November 25, 2014

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 On May 10, 2013, a jury in Park County Justice Court found Joel Boniek guilty of obstructing a peace officer, resisting arrest, and fleeing or eluding a peace officer. He appealed his conviction to the Sixth Judicial District Court, Park County, raising 21 different issues on appeal. On November 12, 2013, the District Court affirmed his conviction in an order, and from that order Boniek appeals to this Court.

¶3 On July 18, 2012, Joel Boniek drove to a roadblock at Caledonia Road and Highway 89 South in Park County, set up by the Montana Highway Patrol, the Park County Sheriff's Office, and the Park County Fire Department. The roadblock was due to an active wild fire in the area. Boniek did not stop his vehicle as he approached the roadblock. Instead, Boniek drove backwards down Highway 89 and then entered Caledonia from private property. Montana Highway Patrol Trooper Jim Sulages witnessed Boniek fishtail as he accessed Caledonia and speed down the gravel road. Trooper Sulages pursued Boniek and attempted to make a traffic stop. Trooper Sulages had his lights and sirens activated, but Boniek did not pull over. During the pursuit, Boniek and Trooper Sulages passed two other law enforcement officers, one of whom attempted to block the road so Boniek could not proceed. Boniek drove off the road to get around the officer's vehicle.

¶4 Park County Sheriff's Deputy Jason Hopkin was working a different section of the roadblock, when he was radioed that a pursuit was taking place. Deputy Hopkin was able to block the road at a location with deep embankments on either side, forcing Boniek to stop his vehicle when he reached Deputy Hopkin. Boniek then exited his vehicle. Deputy Hopkin was outside his vehicle with his service weapon drawn and instructed Boniek to show his hands, but Boniek did not comply. Deputy Hopkin walked towards Boniek with his service weapon drawn. By this time, Trooper Sulages had exited his vehicle, and both officers repeatedly instructed Boniek to turn around and put his hands behind his back. Boniek still did not comply. When Deputy Hopkin attempted to put Boniek's hands behind his back, Boniek resisted. Boniek was directed to get on the ground. When Boniek argued and dropped his left hand to what appeared to be a holster, Deputy Hopkin did a front leg sweep and forced Boniek to the ground. The officers then handcuffed Boniek, and removed a loaded .45 Colt Derringer from a holster on Boniek's left hip.

¶5 Boniek appeared pro se in Park County Justice Court. After the jury convicted Boniek, he was ordered to pay fines, and given a suspended sentence of 10 days, followed by one year probation, on the conditions that he pay all fines by May 20, 2013 (or make regular monthly payments), and pay the costs of the jury trial within six months. Boniek appealed to the District Court, which affirmed his convictions in an order dated November 12, 2013. From that order Boniek appeals to this Court.[1]

---

[1] Park County Justice Court became a court of record on January 14, 2013—before Boniek's May 10, 2013 trial—under authority of § 3-10-101(5), MCA. Therefore, Boniek had the right to appeal his convictions to District Court under § 3-10-115, MCA.

¶6 Prior to Boniek's trial, the Justice of the Peace granted the State's motion in limine, and limited the subjects Boniek could present at trial. The State argued that the subjects Boniek wanted to discuss were irrelevant to the charges and were likely to confuse and mislead the jury under M. R. Evid. 401 and 403. The order held that Boniek was not allowed to discuss his religious beliefs, inapplicable sections of the Montana Code, the authority of the Justice Court, judicial officers, and law enforcement, or reference outside media coverage of the trial. We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *In re S. T.*, 2008 MT 19, ¶ 9, 341 Mont. 176, 176 P.3d 1054. The Justice Court did not abuse its discretion by granting the State's motion in limine. *See* M. R. Evid. 401 (evidence must make any "determination of the action" more or less probable to be admissible); M. R. Evid. 403 (relevant evidence may be excluded if the "probative value is substantially outweighed by danger of . . . confusion of the issues, or misleading the jury").

¶7 Boniek filed several papers with the Justice Court prior to his trial. All the documents were treated as motions by the Justice Court, and were all denied for failure to cite any relevant authority. On appeal to our Court, Boniek specifically addresses his "Ex Parte Petition for a Writ Quo Warranto." The Justice Court did not abuse its discretion in denying the various papers Boniek filed prior to his trial, including the quo warranto motion. On appeal, Boniek fails to cite any relevant authority to support a contrary result. "We have repeatedly held that it is not this Court's obligation to conduct legal research on behalf of a party or to develop legal analysis that might support a party's position." *State v. Cybulski*, 2009 MT 70, ¶ 13, 349 Mont. 429, 204 P.3d 7; M. R. App. P. 12(1)(f).

4

¶8 Boniek has continually challenged the personal jurisdiction and subject matter jurisdiction of the courts of the State of Montana. Boniek asserts that "he is a living man, not an artificial person subject to codes and statutory law." The State responds that Boniek has shown no evidence of renouncing his citizenship to the United States pursuant to 8 U.S.C. § 1481 et seq., and by his own admission Boniek's "home" is in Park County, Montana. The State is correct. By choosing to live in Park County, Montana, Boniek—and all other living men and women who choose to live in Park County—are governed by our laws and the Constitution of the State of Montana.

¶9 In regards to subject matter jurisdiction, our state courts presumptively have jurisdiction over crimes committed in Montana. *State v. Stasso*, 172 Mont. 242, 248, 563 P.2d 562, 565 (1977). Boniek does not dispute that the events leading to his arrest occurred in Park County, Montana. Justice courts have jurisdiction over misdemeanors which occur in their respective counties. Section 3-10-303(1)(a), MCA. This jurisdiction includes charges of resisting arrest under § 45-7-301, MCA, and obstructing a peace officer pursuant to § 45-7-302, MCA. Section 3-10-303(1)(a), MCA. Justice courts also have concurrent jurisdiction with district courts when a misdemeanor carries a possible penalty of more than $500, and/or more than six months in jail, such as fleeing from or eluding a peace officer pursuant to § 61-8-316, MCA. Section 3-10-303(1)(c), MCA. The laws granting our justice courts jurisdiction in criminal matters are based on Article VII, Section 5 of the Montana Constitution. Boniek's challenges to the personal and subject matter jurisdiction of our state courts are without merit.

¶10 Boniek argues that his property rights under Article II, Section 3 of the Montana Constitution supersede the duties of our emergency responders and law enforcement to serve and protect the public at large. He argues that his rights to protect his property justified his refusal to abide by the commands of law enforcement officers. Boniek's argument is devoid of citation to legal authority in support of this argument. We therefore decline to consider this argument. *Cybulski*, ¶ 13; M. R. App. P. 12(1)(f).

¶11 We likewise decline Boniek's invitation to find the Montana statute empowering the fire chief (§ 7-33-2001, MCA) unconstitutional because, according to Boniek, it interferes with his personal property rights, as protected by Article II, Section 3. Again, Boniek fails to cite legal authority in support of this assertion. *Cybulski*, ¶ 13; M. R. App. P. 12(1)(f). Moreover, we generally decline to address arguments raised for the first time on appeal. *State v. Reim*, 2014 MT 108, ¶ 28, 374 Mont. 487, 323 P.3d 880 (citations omitted).

¶12 Boniek argues that the Park County Fire Chief and the Deputy County Attorney who prosecuted him are without proper credentials, thereby rendering their offices "vacant" pursuant to § 2-16-501(9), MCA. Boniek's crimes do not implicate the authority or duties of the Fire Chief; therefore, the credentials of the Park County Fire Chief are irrelevant to this case.

¶13 With respect to Boniek's challenge to the authority of the Deputy County Attorney, the District Court correctly ruled that § 2-16-501(9), MCA, prescribing that officers' positions become vacant in the event of "the incumbent's refusal or neglect to file the incumbent's official oath or bond within the time prescribed," does not apply to a deputy county attorney. A deputy county attorney is not elected or appointed to office, and is

6

therefore not an "incumbent" according to § 2-16-501(9), MCA. The State officials involved in this case were within their authority to arrest and prosecute Boniek for his crimes.

¶14    Boniek makes a vague claim that the Justice Court was without sufficient evidence to convict him, referencing only the dash cam video provided by the State at trial. We review a question on the sufficiency of the evidence to determine whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. We review a jury's verdict to determine whether sufficient evidence exists to support the verdict, not whether the evidence could have supported a different result. *State v. Field*, 2005 MT 181, ¶ 15, 328 Mont. 26, 116 P.3d 813 (citations omitted). Based on our review of the record, including the video and the testimony of the witnesses at trial, we conclude that a reasonable jury could have found the elements of Boniek's crimes beyond a reasonable doubt.

¶15    Boniek makes vague challenges to the particularized suspicion required for a traffic stop and probable cause required for arrest. To determine if a police officer has sufficient facts to form a particularized suspicion of wrongdoing which would justify an investigative stop, the State must show: (1) objective data and articulable facts from which he or she can make certain reasonable inferences; and (2) a resulting suspicion that the person to be stopped has committed, is committing, or is about to commit an offense. *Brown v. State*, 2009 MT 64, ¶ 20, 349 Mont. 408, 203 P.3d 842. Whether a particularized suspicion exists is a question of fact determined by examining the totality of the circumstances. *Brown*, ¶ 22.

¶16     In this case, Trooper Sulages articulated several reasons for his pursuit of Boniek. Sulages witnessed Boniek fishtail as he entered Caledonia, a gravel road, and he saw Boniek travelling over the speed limit on the same gravel road.  These events also occurred beyond the barricade set up by the local law enforcement.  Based on the totality of these circumstances, Trooper Sulages and Deputy Hopkin had the requisite particularized suspicion to justify a traffic stop.  *Brown*, ¶ 22.  The particularized suspicion ripened into probable cause to arrest based on the events that occurred after Boniek stopped.  *Hulse v. DOJ, Motor Vehicle Div.*, 1998 MT 108, ¶ 13, 289 Mont. 1, 961 P.2d 75.

¶17     Boniek also challenges the District Court's order because the Justice Court mistakenly called him back for resentencing.  On December 12, 2013, the Justice Court sentenced Boniek to 10 days of jail, with that time suspended, and probation for six months.  The original sentence pronounced at trial on May 10, 2013, sentenced Boniek to ten days of jail time, with that time suspended, and probation for one year.  The District Court was allowed to correct this error by issuing a corrective order on December 31, 2013, because the Justice Court's new sentence obviously conflicted with the sentence pronounced at trial.  *State v. Lane*, 1998 MT 76, ¶ 45, 288 Mont. 286, 957 P.2d 9.

¶18     Boniek alleges various nebulous due process violations throughout the proceedings in Park County Justice Court and the District Court.  To support these alleged violations, Boniek simply reiterates many of his other unsupported arguments.  Boniek failed to adequately brief these challenges and provide citation to relevant authority on any specific due process rights of criminal defendants.  *Cybulski*, ¶ 13; M. R. App. P. 12(1)(f). Furthermore, our review of the record finds no violations of Boniek's due process rights.

¶19    Finally, Boniek challenges the legality of his sentence because the written judgment from Justice Court was not entered on the record within 30 days of the oral pronouncement of his sentence at trial. We review a criminal sentence only for legality—that is, whether the sentence falls within the statutory parameters. *State v. Tirey*, 2010 MT 283, ¶ 19, 358 Mont. 510, 247 P.3d 701. Section 46-18-116, MCA, provides that "[t]he written judgment must be signed and must be entered on the record within 30 days after the oral pronouncement of the disposition of the case." Although the sentence orally pronounced at trial on May 10, 2013, was not put in a written order until August 30, 2013, the District Court correctly ruled that this delay did not implicate any of Boniek's substantial rights. Boniek was able to proceed with a timely appeal to the District Court. *See State v. Ferguson*, 2005 MT 343, ¶¶ 121-23, 330 Mont. 103, 126 P.3d 463 (expressing concern when written judgments are not entered in a timely fashion according to § 46-18-116, MCA, but noting that there are no remedial measures for violations of this time limit).

¶20    We have determined to decide this case pursuant to Section I, Paragraph 3(d), of our Internal Operating Rules, which provides for noncitable memorandum opinions. We decline to reverse Boniek's conviction, and we do not deem our Fire Chief statute, § 7-33-2001, MCA, unconstitutional. Having reviewed the briefs and the record on appeal, we conclude that Boniek has not met his burden of persuasion. The Justice Court and District Court did not abuse their discretion, and the legal issues of this case are controlled by settled Montana law, which the Justice Court and District Court correctly interpreted.

¶21    Affirmed.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ BETH BAKER